**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

------------------------------------------------------------------X

WAYNE T. MOULTON,

        Plaintiff,

v.

        **COMPLAINT AND DEMAND**
        **FOR JURY TRIAL**

COUNTY OF TIOGA, NEW YORK;
TIOGA COUNTY SHERIFF'S DEPARTMENT;     Civil Action No.:  3:22-cv-340 (MAD/ML)
GARY W. HOWARD, individually and in his
capacity as Sheriff of Tioga County; and
SHAWN J. NALEPA, individually and in his
capacity as Tioga County Sheriff's Department
Captain of Operations,

        Defendants.

------------------------------------------------------------------X

Plaintiff, Wayne T. Moulton ["Moulton" or "Plaintiff"], by and through his undersigned

attorney upon knowledge as to his own conduct and upon information and belief as to all other

matters, alleges for his Complaint against Defendants County of Tioga, NY ["County"], the

Tioga County Sheriff's Department ["Sheriff's Department"], Tioga County Sheriff Gary

Howard, in both his individual and official capacities ["Howard"], and Tioga County Sheriff's

Department Captain of Operations Shawn Nalepa ["Nalepa"] in both his individual and official

capacities, [collectively, "Defendants"], the following facts:

**NATURE OF THE ACTION**

1.     This action arises out of Defendants' violation of Plaintiff's First Amendment and

Due Process rights, and Defendants' defamation of Plaintiff, when Defendants made false

statements regarding Plaintiff to the New York State Division of Criminal Justice Services

["DCJS"], resulting in his name being removed from the New York State Central Registry of

Police and Peace Officers ["Registry"], in order to prevent him from running for the position of Tioga County Sheriff, and in retaliation for his refusal to withdraw statements he had made indicating his interest in running for the office.

2.    Defendants' false and inaccurate statements to the DCJS resulted in Plaintiff's name being removed from the Registry, thereby foreclosing his eligibility to fill any government position, elected or otherwise, in the field of law enforcement.

3.    To remedy Defendants' conduct, Plaintiff files this lawsuit under 42 U.S.C. §§1983 and 1988 for violation of Plaintiff's civil rights, and New York common law of defamation. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202.

4.    Plaintiff requests a jury trial.

## PARTIES

### *Plaintiff*

5.    Plaintiff Moulton is an individual residing in Tioga County, New York.

### *Defendants*

6.    Defendant County of Tioga is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, with offices located at 56 Main Street, Owego, NY 13827. The County of Tioga is authorized under the laws of the state of New York to maintain a Sheriff's Department, which acts as the County's agent and for which the County is ultimately responsible.

7.    At all relevant times, the County of Tioga hired, employed, supervised, and controlled Defendants Howard and Nalepa.

2

8. At all relevant times, the County of Tioga implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights, which caused the violation of Plaintiff's constitutional rights.

9. The Tioga County Sheriff's Department is a department and agency of the County, with offices located at 103 Corporate Drive, Owego, NY 13827.

10. At all relevant times, the Tioga County Sherriff's Department implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights, which caused the violation of Plaintiff's constitutional rights.

11. Defendant Howard is the elected Tioga County Sheriff, and is a resident of Tioga County. Defendant Howard is and/or was at all times relevant herein, an officer, employee, and/or agent of the County.

12. At all relevant times, Howard supervised and controlled the Sheriff's Department and its employees, including Nalepa.

13. Howard is sued in both his individual and official capacities.

14. At all times relevant herein, Howard was acting under color of state law in the course and scope of his duties and functions as agent, employee, and officer of the County in engaging in the conduct described herein.

15. At all times relevant herein, Howard acted for and on behalf of the County with the power and authority invested in him as officer, agent, and employee of the County and incident to the lawful pursuit of his duties as officer, employee, and/or agent of the County.

16. At all times relevant, Defendant Nalepa was the Captain of Operations of the Tioga County Sheriff's Department, and is a resident of Tioga County.

3

17. Nalepa is and/or was at all times relevant herein, an officer, employee, and/or agent of the County.

18. At all times relevant, Nalepa was acting under color of state law in the course and scope of his duties and functions as agent, employee, and officer of the County and/or Sheriff's Department in engaging in the conduct described herein.

19. At all times relevant herein, Nalepa acted for and on behalf of the County and/or Sheriff's Department with the power and authority invested in him as officer, agent, and/or employee of the County and/or Sheriff's Department and incident to the lawful pursuit of his duties as officer, employee, and agent of the County and/or the Sheriff's Department.

20. Nalepa is sued in both his individual and official capacities.

## JURISDICTION AND VENUE

21. The Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §1367.

22. Venue is proper under 28 U.S.C. §1391 because Defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## STATEMENT OF FACTS

### *Background*

23. Pursuant to New York General Municipal Law §209-q, New York State public employers may only appoint a police officer who has been awarded a certificate attesting his satisfactory completion of the Municipal Police Training Council Basic Training Program.

24.     An officer's certification remains valid for the duration of his employment and for a four-year period following separation from employment for reasons other than removal for cause.  *GML §209-q(1)(b)(i)(c)*.

25.     The DCJS is charged with maintaining a Registry of all certified police officers and peace officers in the state.  *New York State Executive Law §854*.

26.     The DCJS maintains the Registry.  *9 NYCRR §6056.1 et seq.*[1]

27.     On January 15 of each year, public employers are required to submit the name of every police officer they employ and the name of each officer whom they have ceased to employ. *Exec. Law §9845(d); 9 NYCRR §6056.5(d)*.

28.     Additionally, a public employer is required to inform the DCJS *immediately* when an officer ceases to serve as the result of a removal for cause.  *Exec. Law §845(d); 9 NYCRR §6056.4(c)*.

29.     The reason for removal must be included in the public employer's transmission to the DCJS.  *9 NYCRR §6056.4(c)*.

30.     The DCJS is required to inform prospective employers of the reason for an officer's removal from previous employment.  *9 NYCRR §6056.4(e)*.

31.     The DCJS provides prospective employers the required information by means of the Registry.

---

[1] On October 20, 2021, the DCJS promulgated emergency amendments to section 6056 in response to the New York State Professional Policing Act of 2021, parts of which went into effect on October 16, 2021. *NYS Registry 10/20/21*. The amendments, *inter alia*, modify the definition of "Removal for cause" and add procedures for officers to contest removed from the Registry directly with the DCJS. At the time of Moulton's removal, these procedures were not available.

32.     Prior to October 20, 2021, 9 NYCRR §6056.2 defined "removal for cause," in relevant part, as an employee's resignation or retirement while a disciplinary process has been commenced.

### More Specifically As To Plaintiff's Employment With Tioga County

33.     Plaintiff was hired as a corrections officer by the Tioga County Sheriff's Department in September 1991.

34.     After completing the Municipal Police Training Council Basic Training Program in 1997, Plaintiff became a police officer.

35.     Plaintiff's name was duly entered into the Registry.

36.     During his career, Plaintiff was promoted to Deputy Sheriff Patrolman, then to Sergeant, Investigator, Senior Investigator, and in May 2019 he was made Undersheriff.

### More Specifically As To Plaintiff's First Amendment Activities

37.     In 2018, Defendant Howard recommended that Plaintiff begin positioning himself to succeed Howard as Tioga County's next elected Sheriff.

38.     During several subsequent conversations, Plaintiff expressed his interest in pursuing a candidacy for Tioga County Sheriff.

39.     Plaintiff's expressions of interest in pursuing such candidacy were protected by the First Amendment of the United States Constitution.

40.     Plaintiff's political aspirations and his statements regarding same caused no disruption and had no effect whatsoever on the County's or Sheriff's Department's activities.

41.     Plaintiff's political aspirations and his statements regarding same were made in his capacity as a citizen, involved matters of public concern, and were not made pursuant to his job duties.

42.     Howard asked Plaintiff who Plaintiff would consider for Undersheriff if Plaintiff were elected Sheriff.

43.     Plaintiff named several individuals, including Lieutenant Nathaniel Marsh ["Marsh"],[2] who was also employed by the Sheriff's Department.

44.     In or around the first part of 2019, Howard asked Plaintiff not to state that Plaintiff was considering running for Tioga County Sheriff, as Howard had decided to run for another term.

45.     In response to Howard's request, Plaintiff stated that he would retire from the Sheriff's Department.

46.     When Plaintiff stated he intended to retire, Howard offered Plaintiff the position of Undersheriff.

47.     Plaintiff accepted the offer to become Undersheriff, and in May 2019 Plaintiff was promoted to the position Undersheriff.

48.     Plaintiff's probationary period in the position of Undersheriff was only one month; then the appointment was made permanent.

49.     Meanwhile, Plaintiff continued publicly to discuss his intention to run for Sheriff.

50.     Plaintiff's continued statements regarding his political aspirations, and his refusal to withdraw same, were speech and/or conduct protected by the First Amendment of the United States Constitution.

51.     Plaintiff's continued statements regarding his political aspirations caused no disruption and had no effect whatsoever on the County's or Sheriff's Department's activities.

---

[2] Marsh passed away on July 23, 2021.

7

52.    Plaintiff's continued statements regarding his political aspirations were made in his capacity as a citizen, involved matters of public concern, and were not made pursuant to his job duties.

### *More Specifically As To Defendants' Actions*

53.    On or around May 8, 2020, Howard accused Plaintiff, Marsh, and then Senior Investigator Timothy Schmidt ["Schmidt"] of drinking on the job.

54.    The accusations against Plaintiff were false.

55.    Plaintiff did not observe Marsh or Schmidt drinking on the job.

56.    When Howard made the accusation, Plaintiff requested an opportunity to defend himself from the accusations.

57.    Plaintiff was prepared to take a sobriety test to prove that he had not been drinking.

58.    Howard refused to allow Plaintiff to say anything, stating, in sum and substance, "Retire now or you are fired."

59.    Howard did not allow or order Plaintiff to take a sobriety test.

60.    Howard's actions deprived Plaintiff of the opportunity to clear his name because Howard did not afford him the opportunity to defend himself or to take a sobriety test, which he would have passed, and which would have exonerated him of Howard's false accusations.

61.    Plaintiff believed he served at Howard's pleasure and that Howard could dismiss him without a Civil Service hearing.

62.    Because of Plaintiff's understanding that he served at Howard's pleasure, Plaintiff retired pursuant to Howard's order effective May 18, 2020.

63.     On June 18, 2020, the Sheriff's Department reported Plaintiff's separation to the DCJS as a "retirement."

64.     On January 15, 2021, the Sheriff's Department did not report any change in Plaintiff's separation status to the DCJS.

65.     Plaintiff's name remaining on the Registry after his retirement was a protected liberty interest which enabled him to pursue other government employment in the field of law enforcement, including running for the office of County Sheriff.

66.     Plaintiff was provided a "Retired Officer" badge allowing him to continue to carry a concealed weapon.

67.     "Retired Officer" badges are only provided to officers who separate from service in good standing.  *See., 18 U.S.C. §926C.*

68.     Between June 18, 2020 and on or about May 11, 2021, Moulton's separation was reported on the Registry as a "retirement."

69.     Marsh, who was accused along with Plaintiff and Schmidt, resigned effective May 15, 2020.

70.     On June 18, 2020, the Sheriff's Department reported Marsh's separation to the DCJS as a "resignation."

71.     Upon information and belief, Marsh's name remains on the Registry as having been separated due to resignation.

72.     Schmidt, who was accused along with Plaintiff and Marsh, did not resign or retire, and his employment was not terminated.

73.     Upon information and belief, Schmidt never expressed an interest in running for Sheriff.

9

74. Upon information and belief, Schmidt was never mentioned as a potential appointee for Undersheriff.

75. Schmidt's name remains on the Registry as an officer employed by Tioga County.

***More Specifically As To Defendants' False Statements Regarding Plaintiff***

76. On or around May 18, 2021, Plaintiff received notification from the DCJS that his name had been removed from the Registry.

77. The DCJS's May 18, 2021 letter stated that the Sheriff's Department had represented to the DCJS that Plaintiff had ceased to serve the Sheriff's Department due to alleged incompetence or misconduct.

78. Plaintiff immediately submitted a Freedom of Information request for all relevant information in the possession of the DCJS and the County.

79. Plaintiff received the requested information from the DCJS on July 9, 2021 and from the County on July 19, 2021.

80. Upon review of the information response, Plaintiff discovered that Defendant Nalepa had made false statements to the DCJS, resulting in Plaintiff's name being removed from the Registry.

81. Specifically, Nalepa stated in a letter to the DCJS dated May 3, 2021, nearly a year after Plaintiff's retirement, in relevant part:

> It is the understanding of this office that former employee Wayne T. Moulton…has a current status with DCJS as "Retired" effective May, 19th 2020. [*sic*] I would like to inform you that prior to his effective retirement date a disciplinary process had commenced for incompetence and/or misconduct and was not concluded prior to his retirement.

82. Upon information and belief, Defendant Howard ordered and caused Nalepa's May 3, 2021 letter to be written and sent to the DCJS.

10

83. At all times relevant, Defendant Howard was acting under color of state law in the course and scope of his duties and functions as agent, employee, and/or officer of the County in engaging in the conduct described herein.

84. Defendant Nalepa sent the May 3, 2021 letter in and during the course and scope of his duties and functions as Captain of Operations of the Sheriff's Department, and while he was acting as agent and/or employee of Defendants County and/or Sheriff's Department.

85. Defendant County and Sheriff's Department, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

86. Defendants' statement that a disciplinary process had commenced for incompetence and/or misconduct prior to Plaintiff's effective retirement date is false.

87. Defendants never implemented any type of disciplinary proceeding whatsoever against Plaintiff, let alone one that was in progress when he retired.

88. Plaintiff was never questioned or investigated by the Sheriff's Department or County Human Resources personnel; he was not provided with a notice of disciplinary action; he was not informed that he was under a disciplinary process; and he was not provided with details of any alleged incompetence or misconduct.

89. Plaintiff's request to defend himself was flatly denied by Howard, who told him to retire or be fired without investigating whether his allegations against Plaintiff were true.

90. Accordingly, Defendants' statements to the DCJS are false.

91. Plaintiff has a liberty interest in not being defamed by his public employer, thereby preventing him from obtaining other government employment.

92. Defendants' statements damaged Plaintiff's reputation, standing, and character in the community.

11

93.     Defendants' statements to the DCJS altered Plaintiff's status and rights by inducing the DCJS to deem his certificate of completion of the training requirements set forth in GML §209-q(1) invalid, resulting in the removal of his name from the Registry.

94.     Because public employers must consult the Registry prior to hiring law enforcement officers, by operation of law, Plaintiff will not be able to secure government employment in the area of law enforcement.

95.     Moreover, the public can access the names of any law enforcement officer whose name has been removed from the Registry, and the reasons for that removal, by accessing the Police/Peace Officer Decertification List link at the Division of Criminal Justice Services website located at https://www.criminaljustice.ny.gov/Officer_Decertification.htm.

96.     Defendants' statements to the DCJS went to the very heart of Plaintiff's professional competence, thereby calling into question Plaintiff's good name, reputation, honor, and integrity, such that he is foreclosed from seeking government employment in his field.

97.     Defendants' statements to the DCJS imposed a stigma and badge of disgrace, and injured his reputation, standing, and character in the community.

98.     Defendants' statements to the DCJS were made for the specific purposes of nullifying Plaintiff as a potential rival to Howard's candidacy for Tioga County Sheriff and retaliating against Plaintiff for the exercise of his First Amendment rights.

99.     Defendants' actions conveyed to Plaintiff as well as to all Tioga County employees that they engage in protected activity at their peril.

100.    Defendants had no reason, a year after Plaintiff's retirement from their employ, to make false statements to the DCJS regarding the circumstances of Plaintiff's separation from

12

employment, other than to stop him from running for office against Howard and to retaliate against him for refusing to withdraw statements regarding his interest in the candidacy.

101. By contrast, Defendants did not state to DCJS that Marsh, who never expressed an interest in candidacy, had been removed due to incompetence or misconduct or during a pending disciplinary investigation, notwithstanding that he was subjected to the same accusations that were leveled against Plaintiff and he resigned within a few days of Plaintiff's retirement.

102. Likewise, Schmidt, who upon information and belief has never expressed an interest in candidacy and has never been discussed as a potential candidate, continues to be employed by the Sheriff's Department, and his name remains on the Registry, notwithstanding that he was subjected to the same accusations that were leveled against Plaintiff.

103. Accordingly, Defendants' actions were causally connected to Plaintiff's exercise of his First Amendment rights.

104. Defendants acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Plaintiff's rights.

105. Defendants Howard's and Nalepa's actions were the result of the County's failure to properly train, supervise, and discipline its officers as the consequence of deliberate policies and practices of the County and Sheriff's Department. These policies and practices are in part responsible for the unconstitutional, wrongful, deliberate, malicious, negligent, careless, and intentional actions of Howard and Nalepa.

106. Defendant County, acting through its Sheriff's Department, developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of his rights.

13

107.    Defendants' actions were taken willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

108.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined to withdraw and retract their false statements and enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such constitutional abuses.

### *More Specifically As To Defendants' Failure To Cure*

109.    On August 2, 2021, pursuant to 9 NYCRR §6056.7, Plaintiff filed arguments on issues of law and fact to the County, and requested that the County retract the false statements it had made to the DCJS and re-submit his name for entry on the Registry.

110.    Upon information and belief, the County did not conduct a formal review of Plaintiff's submissions until September 9, 2021.

111.    The County declined to retract its false statements or resubmit Plaintiff's name for registration with the DCJS.

112.    Plaintiff filed a Notice of Claim with the County on September 22, 2021, less than 90 days after Defendants failed to take action on Plaintiff's 9 NYCRR §6056.7 submissions.

113.    The Notice of Claim was in writing, sworn to by Plaintiff and contained the name and address of Plaintiff.

114.    The Notice of Claim set out the nature of the claim, the time, place, and manner in which the claim arose, and the damages and injuries sustained by Plaintiff.

115.    Defendants have neglected and failed to adjust the claims within the statutory time period.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(42 U.S.C. §1983 and First Amendment Violation)**

116.   Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

117.   By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to freedom of speech under the First Amendment, Defendants are liable for violation of 42 U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

118.   Defendants have violated Plaintiff's First Amendment right to free speech by making false statements in order to curtail his First Amendment activities.

119.   As a consequence of Defendants' actions, Plaintiff has suffered violations of his First Amendment right to free speech.

120.   Plaintiff has fear and apprehension that he will again be subject to similar unlawful acts by Defendants done for the purpose of limiting and preventing his First Amendment protected activities.

121.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages including reputational harm, harm to his standing in the community, harm to his career, harm to his political aspirations, lost income, benefits, job security, and opportunities for career advancement, loss of self-esteem and public esteem, public disgrace embarrassment, humiliation, and emotional distress and injury.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(42 U.S.C. §1983 and First Amendment Retaliation)**

122.   Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

123.    By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to freedom of speech under the First Amendment, Defendants are liable for violation of 42 U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

124.    Defendants have violated Plaintiff's First Amendment right to free speech by making false statements in retaliation against Plaintiff for refusing to withdraw statements regarding his interest in candidacy for office.

125.    As a consequence of Defendants' actions, Plaintiff has suffered violations of his First Amendment right to free speech.

126.    Plaintiff has fear and apprehension that he will again be subject to similar unlawful acts by Defendants done for the purpose of limiting and preventing his First Amendment protected activities.

127.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages including reputational harm, harm to his standing in the community, harm to his career, harm to his political aspirations, lost income, benefits, job security, and opportunities for career advancement, loss of self-esteem and public esteem, public disgrace embarrassment, humiliation, and emotional distress and injury.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(42 U.S.C. §1983 and Fourteenth Amendment Violation)**

128.    Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

129.    By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to due process under the Fourteenth Amendment, Defendants are

liable for violation of 42 U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

130.    Defendants have violated Plaintiff's Fourteenth Amendment right to due process by making false and stigmatizing statements calling into question Plaintiff's good name, reputation, honor, and integrity, and simultaneously foreclosing him from seeking government employment as a law enforcement officer, without affording Plaintiff an adequate, prompt opportunity to clear his name.

131.    Defendants have violated Plaintiff's Fourteenth Amendment right to due process by making false statements to the DCJS, resulting in the DCJS removing Plaintiff's name from the Registry.

132.    Defendants' actions ensure that, by action of law, Plaintiff will not be allowed to fill a law enforcement position with a public employer, even if he is elected to the position of Sheriff.

133.    As a consequence of Defendants' actions, Plaintiff has been deprived of his liberty interest in his name remaining on the Registry after his retirement, enabling him to pursue other government employment in the field of law enforcement, including running for the office of County Sheriff.

134.    As a consequence of Defendants' actions, Plaintiff has been deprived of his liberty interest in not being defamed by his public employer, thereby preventing him from obtaining other government employment.

135.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages including reputational harm, harm to his standing in the community, harm to his career, harm to his political aspirations, lost income, benefits, job security, and opportunities

17

for career advancement, loss of self-esteem and public esteem, public disgrace embarrassment, humiliation, and emotional distress and injury.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Monell Claim)

136.    Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

137.    At all relevant times, Defendant County, acting through its Sheriff's Department, developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of such rights.

138.    Defendants' unlawful actions were taken willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights under the First and Fourteenth Amendments to the U.S. Constitution.

139.    The constitutional abuses and violations by Defendant County, through the actions of its Sheriff's Department and all named Defendants, were and are directly and proximately caused by policies, practices, and/or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant County, including the failure to adequately monitor and train Howard and Nalepa to ensure that they did not violate the constitutional rights of County employees; the failure to properly and adequately discipline Howard and Nalepa; and the failure to remedy Howard and Nalepa's illegal actions by requiring Howard and Nalepa to withdraw and retract all false statements made about Plaintiff and to re-submit Plaintiff's name for inclusion on the Registry.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Defamation)

140.    Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

141.    As described above, Defendants Howard and Nalepa have stated false information regarding the circumstances of Plaintiff's separation from employment from Tioga County.

142.    These statements were untrue and defamatory in that they falsely reported that Plaintiff was separated due to incompetence and/or misconduct, while a disciplinary investigation was in progress.

143.    Defendants Howard and Nalepa knew or should have known that such defamatory statements were false.

144.    Defendants Howard and Nalepa made such defamatory statements with knowledge of their falsity and/or with reckless disregard for their truth or falsity.

145.    Defendants Howard and Nalepa's statements constitute defamation because they impugn Plaintiff's reputation and standing in his career and in the community by falsely claiming that Plaintiff was subject to a disciplinary proceeding which was in progress at the time of his retirement, and that he was incompetent and/or engaged in misconduct while he was employed by Tioga County.

146.    Howard intends to seek re-election as Tioga County Sheriff and therefore acted with malice when he sought to gain unfair advantage in his candidacy by causing the DCJS to remove Plaintiff from the Registry, thereby foreclosing Plaintiff's eligibility to serve as Sheriff.

147.    Defendants County and Sheriff's Department, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

148.    Defendants' defamatory statements have harmed Plaintiff's reputation and standing in his career and in the community, have caused him economic harm, have caused him

19

to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement, and have caused him embarrassment, humiliation, and emotional injury.

149.    Defendants' defamatory statements have harmed Plaintiff because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of a County Sheriff's lawful business and duties as an elected official.

150.    As a direct and proximate result of Defendants' defamation, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace, and emotional distress.

151.    As a direct and proximate result of Defendants' false statements, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

152.    Defendants' defamatory statements were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Defamation _per se_)**

153.    Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

154.    As described above, Defendants Howard and Nalepa have stated false information regarding the circumstances of Plaintiff's separation from employment from Tioga County.

155.    These statements were untrue and defamatory in that they falsely reported that Plaintiff was separated due to incompetence and/or misconduct, while a disciplinary investigation was in progress.

156. Defendants Howard and Nalepa knew or should have known that such defamatory statements were false.

157. Defendants Howard and Nalepa made such defamatory statements with knowledge of their falsity and/or with reckless disregard for their truth or falsity.

158. Defendants Howard and Nalepa's statements constitute defamation because they impugn Plaintiff's reputation and standing in his career and in the community by falsely claiming that Plaintiff was subject to a disciplinary proceeding when he retired, and that he was incompetent and/or engaged in misconduct while he was employed by Tioga County.

159. Howard intends to seek re-election as Tioga County Sheriff and therefore acted with malice when he sought to gain unfair advantage in his candidacy by causing the DCJS to remove Plaintiff from the Registry, thereby foreclosing his eligibility to serve as Sheriff.

160. Defendants County and Sheriff's Department, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

161. Defendants' defamatory statements have harmed Plaintiff's reputation and standing in his career and in the community, have caused him economic harm, have caused him to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement, and have caused him  embarrassment, humiliation, and emotional injury.

162. Defendants' defamatory statements have harmed Plaintiff because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of a County Sheriff's lawful business and duties as an elected official.

163.    As a direct and proximate result of Defendants' defamation, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace, and emotional distress.

164.    As a direct and proximate result of Defendants' false statements, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

165.    Defendants Howard's and Nalepa's defamatory statements were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of punitive damages.

166.    Defendants County's and Sheriff Department's failure to reverse Howard and Nalepa's defamatory statements after receiving Plaintiff's 9 NYCRR §6056.7 submissions was malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights.  As such, Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (*Respondeat Superior*)

167.    Plaintiff repeats and re-alleges by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

168.    The conduct of Howard occurred in and during the course and scope of his duties and functions as the Tioga County Sheriff, and while he was acting as agent and employee of Defendant County.

169.    The conduct of Nalepa occurred in and during the course and scope of his duties and functions as the Sheriff's Department Captain of Operations, and while he was acting as agent and employee of Defendants County and/or Sheriff's Department.

22

170.    Defendants County and Sheriff's Department are liable to Plaintiff under the common law doctrine of *respondeat superior*.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

1.    A declaration that Defendants' conduct violated the First and Fourteenth Amendments to the U.S. Constitution and state common law in the manners alleged herein;

2.    An injunction requiring that Defendants withdraw and retract the May 3, 2021 letter sent by Nalepa to the DCJS;

3.    An injunction requiring that Defendants correct and amend their report to the DCJS to reflect that Plaintiff was not removed from employment for cause; that Plaintiff was not subject to any disciplinary proceeding at the time of his retirement; and that Plaintiff did not engage in misconduct or incompetence in his position as Undersheriff;

4.    An injunction requiring that Defendants notify DCJS that Plaintiff's name was wrongfully removed from the Registry and that Plaintiff's name should be restored to the Registry;

5.    An injunction prohibiting Defendants from making further false statements regarding Plaintiff;

6.    An award to Plaintiff for compensatory damages;

7.    An award to Plaintiff for punitive damages;

8.    An award to Plaintiff of attorneys' fees pursuant to 42 U.S.C. §1988;

9.    An award to Plaintiff of cost of suit pursuant to 42 U.S.C. §§1920 and 1988; and

23

10.    An award to Plaintiff of such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: April 11, 2022

Respectfully Submitted,

SATTER RUHLEN LAW FIRM, PLLC

Sarah E. Ruhlen, Esq.
Satter Ruhlen Law Firm, PLLC
*Attorneys for Plaintiff*
217 S. Salina Street, 6th Floor
Syracuse, NY 13202
T. 315-471-0405
F. 315-471-7849
sruhlen@satterlaw.com