UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WAYNE T. MOULTON,

                Plaintiff,

                                    **Civil Action No.: 3:22-cv-00340**
                                    (MAD/ML)

COUNTY OF TIOGA, NY; TIOGA COUNTY
SHERIFF'S DEPARTMENT; GARY W. HOWARD,
Individually and in his capacity as Sheriff of Tioga
County; and SHAWN J. NALEPA, individually
And in his capacity as Tioga County Sheriff's
Department Captain of Operations
,

                Defendants.

## MEMORANDUM OF LAW SUPPORTING
## DEFENDANTS' MOTION TO DISMISS

Submitted by,
**THE LAW FIRM OF FRANK W. MILLER, PLLC**

**Frank W. Miller, Esq.**
**Bar Roll No.: 102203**

**Giancarlo Facciponte, Esq.**
**Bar Roll No.: 507694**

Office and Post Office Address
6575 Kirkville Road
East Syracuse, New York 13057
Telephone: (315) 234-9900
Facsimile: (315) 234-9908

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTS ...............................................................................................................1

ARGUMENT .........................................................................................................6

I.    Plaintiff has not plausibly pled that he engaged in any conduct protected by the First
      Amendment, failed to plead any adverse actions, and failed to plead any plausible
      causal connection between the claimed adverse actions complained of and free speech
      activities he may have engaged in ...............................................................7

      A.  Plaintiff has failed to allege he engaged in protected conduct under the First
          Amendment.........................................................................................8

      B.  Plaintiff has failed to articulate any adverse actions occurred as a result of his
          alleged protected speech ......................................................................12

      C.  Plaintiff has failed to allege a plausible causal connection between the adverse
          actions complained of and his alleged free speech, if any speech is indeed alleged
          ........................................................................................................14

II.   Plaintiff has failed to plead that his Fourteenth Amendment rights have been violated
      in any way ...............................................................................................16

      A.  Plaintiff has not stated a claim for a violation of due process .............................16

      B.  Plaintiff has not stated a "stigma-plus" claim under federal law...........................19

          i.    Defendants' claim was not stigmatizing or public.....................................19

          ii.   Plaintiff fails to allege a proper deprivation to plausibly set forth a stigma
                plus claim ....................................................................................21

III.  Plaintiff's state law defamation claims fails as he has not pled a false defamatory
      statement was made or that it negatively affected his ability to be gainfully employed
      ........................................................................................................22

IV.   Plaintiff fails to state a claim for municipal liability ...................................23

V.    Plaintiff's "respondeat superior" claim is improper in context and must be dismissed
      ........................................................................................................23

i

VI.     Plaintiff's claims against Nalepa and Howard are not properly asserted via §1983 ...24

CONCLUSION....................................................................................................................................25

# TABLE OF AUTHORITIES

## **Cases**

*Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 272 (S.D.N.Y. 1989)............................22

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) ..............................................................6, 13

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, (2007) ..............................................6

*Benacquista v. Spratt*, 217 F.Supp.3d 588, 600 (N.D.N.Y. 2016)....................................24

*Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)......................................22

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)..................................................17, 19

*Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007) ...............................................9

*Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) ......................17

*Capul v. City of New York*, 2020 WL 2748274, at *1 (S.D.N.Y. May 27, 2020)...................16, 18

*Carpiniello v. Hall*, 2010 U.S. Dist. LEXIS 143558, at *18-19 (S.D.N.Y. Mar. 16, 2010)........8, 9

*Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).................................17

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) ...........8, 12

*City of N.Y. v. Beretta U.S.A. Corp.*, 524 U.S. 384, 392 (2d Cir. 2008)............................7

*City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).....................................................8

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)............................................25

*Codd v. Velger*, 429 U.S. 624, 628 (1977)...................................................................19

*Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983)...........................................................8

*Conti v. Doe*, 535 F. Supp. 3d 257, 275 (S.D.N.Y. 2021) ...........................................22

*Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir.2011).............................16

*Daniels v. Williams*, 474 U.S. 327, 331 (1986) ...........................................................16

*DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) ...............................................19

*Dowd v. DeMarco*, 314 F. Supp. 3d 576, 586 (S.D.N.Y. 2018)...............................................21, 23

*Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986)................................................................9

*Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996)...........................................................17

*Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir. 1977).................................................................19

*Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144 (E.D.N.Y. 2016)............................................................................................................................................11

*Giglio v. Dunn*, 732 F.2d 1133, 1134 (2d Cir. 1984)................................................................18

*Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ............................16

*Grennan v. Nassau Cty.*, 2007 U.S. Dist. LEXIS 23087, at *22-25 (E.D.N.Y. Mar. 29, 2007) .....8

*Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 124 (E.D.N.Y. 2011).......................................9

*Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) ..........................9

*Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001) ...................................17

*Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 354 (E.D.N.Y. 2008)...................9

*Jackson v. City Univ. of New York*, 2006 WL 1751247, at *4 (S.D.N.Y. June 23, 2006).............13

*Jaeger v. Bd. of Educ. of Hyde Park Central School Dist.*, 125 F.3d 844 (2d Cir. 1997).............18

*James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1st Dept. 1976) ........................................................23

*Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003)..................................................................8

*Lewis v. Cowen,* 165 F.3d 154, 163-164 (2d Cir. 1999) .........................................................8, 9

*Liberman v. Gelstein*, 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992) .............22

*Lomotey v. Connecticut Dep't of Transp.*, 2009 WL 82501, at *11 (D. Conn. Jan. 12, 2009)......15

*Lopez v. S.B. Thomas*, 831 F.2d 1184, 1188 (2d Cir.1987) .........................................................12

*McAllister v. New York City Police Dept.*, 40 F.Supp.2d 688, 705 (S.D.N.Y. 1999)...................22

*McMahon v. N.Y. City Bd. of Educ.*, 2006 U.S. Dist. LEXIS 89627 *8 (E.D.N.Y. 2006) .............8

*Mercer v. Schriro*, 337 F. Supp. 3d 109, 132 (D. Conn. 2018) ......................................................15

*Monell v. Department of Social Services*, 453 U.S. 658, 98 S.Ct. 2018 (1978) ...........................24

*Muhammad v. City of Peekskill*, 2008 U.S. Dist. LEXIS 76894 (S.D.N.Y. Sep. 30, 2008)...........7

*Murray v. Town of Stratford*, 996 F.Supp.2d 90, 121-22 (D. Conn. 2014) ...................................15

*Oquendo v. City of New York*, 492 F. Supp. 3d 20, 28 (E.D.N.Y. 2020) ......................................17

*Parker v. Chrysler Corp.*, 929 F.Supp. 162, 166 (S.D.N.Y.1996) .................................................12

*Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004)...................................................16, 19

*Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir.2004) .................................................................13

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).....................19

*Rinaldi v. City of New York*, 2014 WL 2579931, at *8 (S.D.N.Y. June 10, 2014).......................17

*Roe v. City of Waterbury*, 542 F.3d 31, 36-37 (2d Cir. 2008) .......................................................24

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 190 (2d Cir. 2008) .............................................................9

*Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1077 (S.D.N.Y. 1980) .........................................22, 23

*Stenson v. Kerlikowske*, 205 F.3d 1324 (2d Cir. 2000)..................................................................18

*Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir.2003) .................................................................13

*Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)........................................................17

*Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) ....................................................................22

*Velez v. Levy*, 401 F.3d 75, 89 (2d Cir.2005).................................................................................21

*Waste Distillation Technology v. Blasland & Bouck,* 136 A.D.2d 633 (2d Dept.1988)...............23

*Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005) ...............................15

*Zdziebloski v. Town of E. Greenbush*, 336 F. Supp. 2d 194, 201-02 (N.D.N.Y. 2004)................24

## PRELIMINARY STATEMENT

Defendant County of Tioga, New York, Tioga County Sheriff's Department, Sheriff Gary W. Howard, and Captain Shawn J. Nalepa (herein collectively "Defendants") makes this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiff Wayne T. Moulton has failed to state a claim in his Amended Complaint (hereinafter "Complaint") upon which relief can be granted. None of the allegations in the Complaint alleviate Plaintiff's obligation to exhaust his administrative remedies prior to making many of the claims at bar, and Plaintiff failed to file an CPLR Article 78 seeking redress for the administrative action complained of, his constructive termination, retirement badge, and "good guy letter."

Moreover, even with his amendments, Plaintiff has failed to plead facts which would show he engaged in free speech activity or any action by Defendants was casually connected to the same, has failed to plead any publicized untrue and defamatory stigmatizing statement that was connected to a property deprivation or effected his ability to work in his field, and has failed to show that any violation of his constitutional rights occurred for the purposes of municipal liability, or any other theory of liability. Thus, for the reasons stated here, Plaintiff's Complaint should be dismissed.

## FACTS

Plaintiff's allegations are taken as true on a motion to dismiss. Accordingly, the circumstances below are reiterated as relevant from Plaintiff's Complaint.

What is alleged in the Complaint is equal in significance to what is not. There is no allegation in the Complaint that Plaintiff ever exercised his rights under New York State Civil Law and Practice Rules Article 78 to file a petition seeking redress of his administrative grievance

1

regarding his retirement status. *See* Docket Document (Doc.) No. 14. Plaintiff only alleges that he filed a timely notice of claim on Defendants, and sent a letter objecting to the change of his retirement status. *See id* at §130-135.

Defendant employed Plaintiff as Undersheriff. *See* Doc. No. 14 at ¶34-37. Defendant Howard served as Sheriff for the County of Tioga at all relevant times herein, with Defendant Nalepa serving as the County Sheriff's Department's Captain of Operations. *See* Doc. No. 14 at ¶13-21.

Plaintiff alleges, in sum, that he engaged in first amendment activity by stating he has been planning on running for Sheriff in Tioga County when Defendant Howard "finishes his term" since in or about 2017 when he was asked how he wished to be a "future leader." See Doc. No. 14 at ¶38, ¶38-63. But Plaintiff admits that he had the opportunity to run against Sheriff Howard in 2019-2020, yet he did not do so. See Doc. No. 14 at ¶38-63. Instead of running against Defendant Howard, Plaintiff began serving as his undersheriff in 2019, and that term is currently not finished until January 1, 2023. See Doc. No. 14 at ¶38.

New York State law does not require an active license to carry a firearm or any basic police training requirements to serve as Sheriff, as it is an elected position. *See* County Law (CNT) §400. Rather, all Plaintiff must do is obtain the required petitions, adhere to the required administrative procedures, and submit the required forms to run for sheriff after Defendant Howard has concluded his term.[1] *See* Fn. 1. There is nothing alleged in the Complaint which prevents Plaintiff from engaging in the procedure outlined in the election law. *See generally* Doc. No. 14.

---

[1] https://www.elections.ny.gov/RunningOffice.html

While Plaintiff alleges that he made "speech[es]" about his "campaign," throughout his complaint, he does not allege that he engaged in any of the petition gathering activity, financial funding, or other steps contemplated by the election law, and has not alleged that he submitted anything to the State of New York to suggest he had more than a long term, abstract desire to run for Sheriff in the County of Tioga. *See* Doc. No. 14 at ¶38-63. Interestingly, Plaintiff alleges he spoke to members of the republican party regarding his dreams of being sheriff, but does not mention the republican party nominated Defendant Howard at all relevant times.. *See* Doc. No. 14 at ¶38-63.

The allegations of Plaintiff's Complaint specifically admit that his activity surrounding any future candidacy for sheriff was limited to "aspirations." *See* Doc. No. 14 at ¶40. Plaintiff further admits that his abstract aspirations for a future position as sheriff did not cause Defendant Howard to display any prior indications of retaliation or even disapproval of his alleged intentions, if Howard indeed knew of the same. *See* Doc. No. 14 at ¶41.

Focusing on those allegations within the period in question, Plaintiff alleges that he spoke about what the world would be like were he to be sheriff at a Boys and Girls Club event sometime during 2019 through 2021, but admits the funds being raised at that event had nothing to do with any desire he had to run for office. *See* Doc. No. 14 at ¶51. He makes like irrelevant allegations regarding Boys and Girls Club fundraisers which took place on various dates in 2020 and 2021, but does not state anything at these events were intended to promote his alleged future candidacy, or had anything to do with it. See Doc. No. 14 at ¶52-55.

While Plaintiff alleges that Sheriff Howard knew that he aspired to be a candidate for the job, Plaintiff does not allege that Sheriff Howard displayed any prior animus regarding Plaintiff's intentions. *See* Doc. No. 14 at ¶41. In fact, Plaintiff seems to allege that Howard went out of his

way to ensure that Plaintiff remained happy on the job, and promoted him consistently to the position of Undersheriff, where he was serving at the time of his resignation. *See* Doc. No. 14 at ¶34-37, ¶41. There was no disruption to any of Plaintiff's job duties at any time, until the date of Plaintiff's misconduct, by his own admission. *See* Doc. No. 14 at ¶41.

On May 8, 2020, Defendant Howard accused Plaintiff, Officer Nathaniel Marsh, and Senior Investigator Timothy Schmitt of drinking while on the job. *See* Doc. No. 14 at ¶64-73.[2] Plaintiff maintains that the allegations were false, but he was not given any opportunity to clear his name, and Defendant Howard told him "retire now or you're fired." See id at ¶69. Plaintiff admits he voluntarily resigned on May 18, 2020 without awaiting the results of an investigation. *See* Doc. No. 14 at ¶73. He does not allege that he was engaging in any activity related to his alleged intent to "position" himself for Sheriff during the misconduct alleged, or at any time contemporaneous therewith. *See generally* Doc. No. 14.

Plaintiff admits he retired of his own accord, despite his accusations against Defendant Howard, effective May 18, 2020. *See* Doc. No. 14 at ¶73. Thereafter, on June 18, 2020, Plaintiff claims that the Defendants reported his resignation as a "retirement" on June 18, 2020. *See* Doc. No. 14 at ¶74. On May 18, 2021, Plaintiff's status was updated with New York's Division of Criminal Justice Services to after the conclusion of the investigation into Plaintiff's misconduct based on a letter from Defendants dated May 3, 2021. *See* Doc. No. 14 at ¶97, Ex. A.

Plaintiff alleges that Defendant Nalepa was the individual who signed the letter to DCJS. *See* Doc. No. 14 at ¶90-98. Throughout the entire complaint, this is the only act Plaintiff ascribes to Defendant Nalepa. *See generally* Doc. No. 14. Plaintiff claims that Defendant Howard

---

[2] For informative purposes, to wit, Plaintiff and his friends were accused of drinking while on a zoom call training throughout the day, at Plaintiff's residence. *See* Ex. A.

influenced or caused Defendant Nalepa to send this letter, but does not state how. *See* Doc. No. 14 at ¶99.

Plaintiff also claims the other Officers Marsh and Schmitt, with whom he was accused of drinking during training, were treated more favorably than him. See Doc. No. 14 at ¶80-89. But, these Officers were lower in rank, and that Plaintiff was Undersheriff at the time of the misconduct. Doc. No. 14 at ¶37, 44, 64. Plaintiff claims Officer Marsh resigned effective May 15, 2020, and the County never updated its entry with the NYS DCJS to reflect his retirement was not in good standing. *See* Doc. No. 14 at ¶83-84. Plaintiff alleges that Schmitt did not resign or retire, but Plaintiff makes no allegation as to whether he was appropriately disciplined after investigation. *See* Doc. No. 14 at ¶86.

Plaintiff also does not allege what specific misconduct Defendants had found he committed as referenced (but not specifically articulated) in the May 3, 2021 letter. See generally Doc. No. 14. Plaintiffs' Complaint supposes it was related to his retirement, but does not specifically allege the same. See id. In fact, Defendants found that aside from drinking alcohol while on duty, Plaintiff committed a number of acts of financial impropriety and other instances of misconduct.

Plaintiff implicitly claims his retirement was a constructive termination. *See* Doc. No. 14 at ¶64-73. However, he does not allege that the Defendants made any specific representation regarding his "good guy letter" at the time of retirement. See Doc. No. 14 at ¶64-73.

Aside from this implicit claim of constructive termination based on voluntary retirement, the adverse actions alleged by Plaintiff are difficult to discern. Plaintiff alleges that he was prevented from running for Sheriff, not through any specific rule or regulation as a result of Defendants' actions, but because the filing with the DCJS "went to the very heart of Plaintiff's

professional competence, thereby calling into question Plaintiff's good name, reputation, honor, and integrity, such that he is foreclosed from seeking government employment in his field." *See* Doc. No. 14 at ¶116. He claims that he was stigmatized by Defendants May 2021 letter to DCJS, and that the letter had no legitimate purpose. *See* Doc. No. 14 at ¶156-170.

Plaintiff alleges that prior to Defendants' May 2021 letter, he was due the continued right to carry a weapon. See Doc. No. 14 at ¶78, Plaintiff claims that a retired officer's badge would also be due to him under the status quo prior to Defendants' May 2021 letter. Doc No. 14 at ¶79. He also claims he filed an administrative petition for redress to the County pursuant to N.Y. Comp. Codes R. & Regs. tit. 9 § 6056.7, which was denied. See Doc. No. 14 at ¶109-115. Plaintiff does not allege he took any other action prior to the instant filing. See generally Doc. No. 14.

Plaintiff now brings seven claims before this court. As explained below, none of these claims should proceed to discovery, as Plaintiff has either failed to state a claim based on the factual allegations of the Complaint, or has failed to meet a perfunctory requirement of such a claim.

## <u>ARGUMENT</u>

A complaint must contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Rule 8(a)(2) of the Federal Rules of Civil Procedure (emphasis added).  To "show" the pleader is entitled to relief, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, (2007)).  No longer is a claim permitted to survive simply because the plaintiff *might* prove some set of facts in support of the claim which would entitle her to relief.  *Twombly, supra,* 550 U.S. at 563 (abrogating

the former standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not *shown* – that the pleader is entitled to relief."  *Iqbal,* 556 U.S. at 679 (emphasis added).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *See id* at 678.  Thus, a pleading will be insufficient if it offers only "labels and conclusions" in place of sufficiently specific factual allegations to state a facially plausible claim for relief.  *See id.*  Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See id.*

In short, to survive this motion to dismiss for failure to state a claim, Plaintiff's claims must contain factual allegations establishing a right to relief that is more than speculative. *See Muhammad v. City of Peekskill*, 2008 U.S. Dist. LEXIS 76894, at 10-11 (S.D.N.Y. Sep. 30, 2008)(citing *Twombly*, 127 S. Ct. at 1965). Plaintiff must assert specific facts that, when read in connection with the claim stated, render the Plaintiff plausibly entitled to the relief demanded. *See id*. Mere facts that cause the claim to be "conceivable" are not enough, even under the standard that a court must accept as true Plaintiff's allegations when reviewing a motion to dismiss. *See id*, citing *Twombly* 550 U.S. at 1974, *citing City of N.Y. v. Beretta U.S.A. Corp*., 524 F.3d 384, 392 (2d Cir. 2008).

I.   <u>Plaintiff has not plausibly pled that he engaged in any conduct protected by the First Amendment, failed to plead any adverse actions, and failed to plead any plausible causal connection between the claimed adverse actions complained of and free speech activities he may have engaged in.</u>

Plaintiff's first two claims sound in violation of his right to free speech under the First Amendment of the United States Constitution and its corresponding provisions of the New York State Constitution, and retaliation for the same. Thus, regarding both claims, Plaintiff must show

that (1) his speech addressed a matter of public concern, (2) that he suffered an adverse employment action, and (3) that a causal nexus exists between his speech and the employment action so that it can be considered a motivating factor. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006). Both of Plaintiff's initial two claims fail the first and third elements of this test, and thus must be dismissed.

Determining if an employee's speech is protected is a question of law, not fact. *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). Content, form, and context of the speech is important in evaluating this question. *See Connick*, 461 U.S. at 147-48. Where the speech is by a public employee, it will only be protected if it is on a matter a public concern. *Grennan v. Nassau Cty.*, 2007 U.S. Dist. LEXIS 23087, at *22-25 (E.D.N.Y. Mar. 29, 2007) (*citing Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (*quoting Connick*, 461 U.S. at 146)). Speech by a public employee is of concern to the community when it relates to politics or social issues. *See id* (*citing Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (*quoting Connick*, 461 U.S. at 146)). The Supreme Court has provided further guidance, stating that public concern is a matter that is subject of "legitimate news interest" and value or concern to the public. *See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Carpiniello v. Hall*, 2010 U.S. Dist. LEXIS 143558, at *18-19 (S.D.N.Y. Mar. 16, 2010) (*quoting Lewis v. Cowen,* 165 F.3d 154, 163-164 (2d Cir. 1999)).

Where speech is of a personal concern to a public employee, is it not protected. *See Grennan v. Nassau Cty.*, 2007 U.S. Dist. LEXIS 23087, at *22-25 (E.D.N.Y. Mar. 29, 2007). Speech is not protected where the public employee's "overriding interest" is personal, and not of a public nature. *See id* (*citing McMahon v. N.Y. City Bd. of Educ.*, 2006 U.S. Dist. LEXIS 89627

8

*8 (E.D.N.Y. 2006) (*quoting Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005))). The motive of the employee is relevant to making this determination. *Carpiniello v. Hall*, 2010 U.S. Dist. LEXIS 143558, at *18-19 (S.D.N.Y. Mar. 16, 2010). "In analyzing whether speech addresses a matter of public concern, courts must focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 354 (E.D.N.Y. 2008)(*citing Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir.1999)(internal quotations omitted)).

A. *Plaintiff has failed to allege he engaged in protected conduct under the First Amendment.*

A public employee must speak both as a private citizen and on an actual matter of public concern for her speech to be protected. *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 124 (E.D.N.Y. 2011). It is not enough that a public employee is acting as a citizen when the speech is uttered, if the speech was connected to their employment. *See id*. A public employee specifically cannot "transform a personal grievance into a matter of public concern by invoking a supposed popular interest." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 190 (2d Cir. 2008)(*citing Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007) (*quoting Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986)). Generalized public interest is not enough to classify speech as public in nature. *See id*.

Plaintiff's position of Undersheriff is unquestionably considered one of public employment, and thus his First Amendment claims should be evaluated under the above paradigm. While Plaintiff's amendments seek to add more specificity to his Complaint, the factual allegations still fall short of the sort required to maintain these causes of action. *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's amended facts confirm that he took no steps to campaign as sheriff

when he alleges he was retaliated against, and rather only had an abstract desire to run for the position one day, after Defendant Howard was no longer serving.

Plaintiff alleges that he spoke with people at several events related to fundraising and promotion of the Boys and Girls Club, and its causes, but unrelated to his own supposed desire to be sheriff. Not one of Plaintiff's allegations describe any actions he engaged in which reasonably could have led Defendant Howard to believe that Plaintiff was going to run against him during the period at issue, which is specifically May of 2020 through May 2021. Even when the facts are viewed most favorably to Plaintiff, all the Complaint states is that Plaintiff spoke to friends at a few Boys and Girl's Club benefits about his desire to one day run for sheriff, almost a year prior to Defendants sending DCJS the May 2021 letter. See Doc. No. 14 at ¶38-63. In fact, the most recent discreet event where Plaintiff claims first amendment activity occurred was in December of 2020. See Doc. No. 14 at ¶58.  Moreover, the current term of sheriff does not expire until December of 2023, and there is nothing prevent Plaintiff from running for that position at the time. Qualification documents for the race are not due yet, and there is nothing in the Complaint which alleges that Defendant Howard is seeking to run again.[3]

Plaintiff also maintains that he engaged in other first amendment activity at leadership events for children in front of Defendant Howard as early as 2017. See Doc. No. 14 at ¶38-63. Plaintiff admits that after exposing his dreams, he was provided the position of undersheriff and experienced no negative conduct or adverse action in his employment from Howard until the events that led to his resignation. See Doc. No. 14 at ¶37. Plaintiff's retaliation claim is not

---

[3] https://www.elections.ny.gov/RunningOffice.html

plausible, as he had nothing but abstract dreams of becoming sheriff which Howard already knew of prior to Plaintiff's resignation and the letter to DCJS a year later.

In short, Plaintiff has failed to allege he engaged in specific enough conduct as it related to a protected first amendment interest to sustain his claims. *Giachetto* is particularly illuminating in this regard. There, a public employee plaintiff claimed violation of her right to free speech and retaliation for the same, because of her being an "outspoken critic" and "an advocate against the [School District's] past practices of discrimination." *Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144 (E.D.N.Y. 2016). The District Court determined that *Giachetto's* pleading was inadequate under the law, as it did not provide the Court enough particular allegations to determine if Plaintiff has made out the essential elements of the claim at bar. *See id*. "Unspecified utterances" alleged by Complainant, without regard to the timeframe in which they occurred, were even deemed insufficient under the federal pleading standard. Here, the Court is similarly faced with Plaintiff's unspecified desires to become sheriff one day, supported most by his chats with friends over the years at unrelated events.

Plaintiff does not allege he contacted any political parties for endorsement, made any public announcements, placed any political candidacy signs in public, or engaged in any political fund raising regarding his aspirations. He does not allege he sought any endorsements. He does not allege he filled out any of the required paperwork or sought any petition endorsements, individually or from a political party of any type. Instead, Plaintiff only claims that he had several *private* conversations about his dreams of becoming sheriff, and gave some talks to children on leadership, all before being promoted by Defendant Howard and long before the 2021 letter to DCJS. None of these scant allegations by Plaintiff could allow the Court to determine that Plaintiff has plausibly made out the essential elements of his First Amendment Claims, as they are not

allegations of any first amendment conduct. Moreover, given the temporal distention between the alleged activity and the alleged retaliatory conduct, if Plaintiff's conduct did state a claim, any employee of an elected official would also have a claim for retaliation if they simply note to some friends they would like to one day have that elected position, should a dispute arise at their employment even years later.

Without any protected meaningful words or actions at issue in the allegations which could truly serve as a protected interest, there is no plausible way which Plaintiff can be said to have met his pleading burden regarding his claims of first amendment violations or retaliation. Plaintiff's dreams do not qualify him for first amendment protections alone, without more. Accordingly, these claims should be dismissed.

B. *Plaintiff has failed to articulate any adverse actions occurred as a result of his alleged protected speech.*

The second element of a claim of first amendment violation or retaliation is that Plaintiff must claim he suffered an adverse action. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006). All actions alleged in the circumstance of Plaintiff's complaint are postretirement issues, save for his retirement itself. Accordingly, to satisfy the second element of his first and second claims, Plaintiff must show that he suffered an adverse action through his retirement as a constructive discharge. Normally, a retirement cannot serve as an adverse action for the purpose of making out the essential elements of a claim, without more. *Lopez v. S.B. Thomas*, 831 F.2d 1184, 1188 (2d Cir.1987); *Parker v. Chrysler Corp.*, 929 F.Supp. 162, 166 (S.D.N.Y.1996).

To prove that one's retirement was not voluntary for the purposes of considering it an adverse action, a plaintiff must show that defendants "intentionally creates a work atmosphere so

intolerable that [the plaintiff] is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir.2003). Whether the employment conditions alleged by an employee are sufficiently intolerable as to meet this standard is an objective standard of review by the Courts, of a reasonable person in Plaintiff's position. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir.2004).

It has been found in this Circuit that a resignation is not a constructive discharge when a plaintiff only alleges that he was presented with a choice to resign or take some other action, if a reasonable person would not think resignation was the only opinion under the circumstances. *Jackson v. City Univ. of New York*, 2006 WL 1751247, at *4 (S.D.N.Y. June 23, 2006). This is true where the employee fails to allege any other events of discrimination or retaliation that would render his work environment so intolerable that a reasonable person would objectively not subject himself to it. *See id*.

There are no alleged facts whatsoever in this Complaint which would plausibly indicate that Plaintiff was subject to intolerable working conditions prior to his May 2020 voluntary retirement, even after the chance to amend. Plaintiff specifically alleges the contrary in fact, that his comments about his dreams of becoming sheriff one day never had any effect on his employment or work environment prior to the misconduct at issue. *See* Doc. No. 14 at ¶41, 62.

Like the plaintiff in *Jackson*, *infra*, no reasonable person in Plaintiff's position would have resigned simply because he was accused of misconduct, if he did not commit that misconduct, particularly given that Plaintiff has not alleged anything which could show he was previously subject to an intolerable working environment (and seems to implicitly deny any such claim exists). *Jackson v. City Univ. of New York*, No. 05 CIV. 8712 (JSR), 2006 WL 1751247, at *4 (S.D.N.Y. June 23, 2006). Plaintiff only alleges that he was told to resign or he would be fired after experiencing no other supposedly hostile conduct, and this statement alone is not enough to

find that a constructive discharge took place under the law. Accordingly, Plaintiff has not stated a claim for constructive discharge.

As for Plaintiff's other qualms with Defendants, none are adverse actions for the purpose of his first two claims. The May 2021 letter took place long after Plaintiff had voluntarily retired, was administrative in nature, and did not pertain to any current employment venture by Plaintiff. It was not published nor was it disclosed to any other person until Plaintiff's own allegations in this lawsuit. Plaintiff does not allege in his Complaint that Defendants engaged in any other acts during the investigation of his misconduct from May of 2020 through May of 2021 which could qualify as an adverse action. He also expressly does he claim that anything of note took place during his employment with Defendants since 2018, save for the May 2020 misconduct.

Accordingly, since Plaintiff has failed to plead facts that could show he was subject to an adverse action by Defendants, his first two claims should be dismissed.

C.  *Plaintiff has failed to allege a plausible causal connection between the adverse actions complained of and his alleged free speech, if any speech is indeed alleged.*

Plaintiff must also plausibly allege facts that could show a causal connection between the adverse action he experienced and his protected conduct. This is impossible, as Plaintiff has failed to allege protected conduct as discussed *supra*. Even if Plaintiff did allege specific conduct which qualified for protection under First Amendment case law, his first two claims would fail because he has not put forward facts that could show the May 2021 letter, or his May 2020 retirement/constructive termination, were casually connected to his dreams of becoming sheriff since 2017.

"Temporal proximity of the adverse action to the protected activity is a key indicator of retaliation[;]" however, "[t]he operative issue is not simply the length of time between the

protected activity and the alleged retaliation but the demonstrated nexus between the two." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 132 (D. Conn. 2018)(*citing Murray v. Town of Stratford*, 996 F.Supp.2d 90, 121-22 (D. Conn. 2014) (*quoting Lomotey v. Connecticut Dep't of Transp.*, 2009 WL 82501, at *11 (D. Conn. Jan. 12, 2009)). "In this Circuit, an inference of causation is defeated (1) if the allegedly retaliatory [action] took place at a temporally removed from the protected activity; or (2) if there was an intervening causal event...." *Mercer v. Schriro*, 337 F. Supp. 3d 109, 132 (D. Conn. 2018) (citing *Murray*, 996 F.Supp.2d at 122) (*quoting Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y. 2005)).

Plaintiff admits he has been dreaming of becoming sheriff since 2017, and publicly available information shows he cannot even run if he so choses until 2023. *See* Doc. No. 14 at ¶38. This was 3 years prior to his misconduct and retirement, and approximately 4 years prior to Defendants' May 2021 letter to DCJS. Furthermore, Plaintiff goes out of his way to allege that there were no issues of retaliation or free speech violations prior to his 2020 misconduct, even though he had expressed his intent to run for Sheriff since in or about 2018. See Doc. No. 14 at ¶41, 62.

Accordingly, no temporal proximity related to any allegations by Plaintiff regarding his intention to run for Sheriff in/since 2017 can be found, as he claims the central events to this complaint occurred several years after he expressed his intention to run for Sheriff in some unspecified way. Moreover, the misconduct allegation itself is an intervening casual event which would destroy any temporal proximity argument made by Plaintiff regarding his 2018 aspirations anyway. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 132 (D. Conn. 2018).

As such, Plaintiff is unable to plausibly show a causal connection exists between the adverse actions alleged and his claimed protected speech, as the events are not linked in time or circumstance in any way in the pleading at issue.

II.    Plaintiff has failed to plead that his Fourteenth Amendment rights have been violated in any way.

Plaintiff makes a claim for violation of his due process rights under the Fourteenth Amendment provision based on Defendants' May 2021 letter to DCJS and the effect it had on Plaintiff's retirement status, and that the May 2021 letter "call[ed] into question Plaintiff's good name." *See* Doc. No. 14 at ¶128-135.

A.  *Plaintiff has not stated a claim for a violation of due process.*

As this claim is brought under §1983, Plaintiff must allege facts which could plausibly show that Defendants deprived him of a federal or constitutional right while acting under the color of state law. *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir.2011). The Fourteenth Amendment guarantees that all individuals shall be free from deprivation of recognized rights without due process of law. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). "The fundamental requirement" of what due process requires in this context "is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.' " *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (*quoting Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). Stated another way, Plaintiff must put forward facts that could show he was deprived of a right in this manner, and the post deprivation process available to him was vitiated by Defendants. *See Capul v. City of New York*, 2020 WL 2748274, at *1 (S.D.N.Y. May 27, 2020). Thus, to make a plausible claim for a due process violation, Plaintiff must show (1) that he was deprived of a property or liberty interest and (2) he was deprived of that

right without the opportunity to be heard in a meaningful manner. *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).

The only right at issue in the alleged facts is Plaintiff's claimed right to continued employment after his resignation. Plaintiff fails to state any other liberty or property right deprivation, as he has no liberty or property interest in a "good guy" letter and or the benefits attached thereto. A right will only qualify for the protections of the fourteenth amendment where one is recognized as entitled to it under state or federal law. *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (*quoting Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Benefits of designation are not protected entitlements if government officials have the discretionary ability to grant or deny them. *Oquendo v. City of New York*, 492 F. Supp. 3d 20, 28 (E.D.N.Y. 2020)(citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

The decision to issue a letter to the DCJS regarding the status of an employee's standing at the time of retirement, or a "good guy letter," is one made at the discretion of the Sheriff. *Oquendo v. City of New York*, 492 F. Supp. 3d 20, 28 (E.D.N.Y. 2020). It has been firmly held that a Plaintiff does not have a property or liberty interest in such a letter, or the benefits it may grant, including but not limited to the ability to continue one's carry permit for a firearm after retirement. *See Oquendo v. City of New York*, 492 F. Supp. 3d 20, 28 (E.D.N.Y. 2020); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001); *Rinaldi v. City of New York*, 2014 WL 2579931, at *8 (S.D.N.Y. June 10, 2014).

Thus, the central theme of Plaintiff's Complaint, that he was wronged by Defendants through their issuance of the May 2021 letter to the DCJS, is meaningless in the due process context. Defendants had broad discretion in deciding whether to issue a letter indicating to DCJS

17

that Plaintiff was in good standing at the time of his retirement. While Plaintiff hoped his quick resignation would short circuit Defendants' investigation, that did not occur, and Defendants accurately reported to DCJS that Plaintiff was not in good standing at the time of his retirement once they concluded their work regarding his misconduct. It was within Defendants discretion whether to issue the May 2021 letter, and Plaintiff was not entitled to its non-issuance by any state or federal law. He does not allege otherwise, because he cannot, as no such state or federal law exists. Note Plaintiff does not claim he was deprived of any of his retirement monetary benefits or pension benefits because of Defendants did their duty in updating Plaintiff DCJS's retirement standing after the conclusion of investigation.

Regarding Plaintiff's choice to retire instead of facing the scrutiny of investigation, he did not file a petition under CPLR Article 78 challenging the action. *Capul v. City of New York*, 2020 WL 2748274, at *1 (S.D.N.Y. May 27, 2020).[4] Resignations are viewed differently than ordinary firings by the Courts for good reason, since even if it is truly coerced, a resignation is not a unilateral act and does not purport to be for a cause on its face. *Giglio v. Dunn*, 732 F.2d 1133, 1134 (2d Cir. 1984). It has been consistently held that New York's Article 78 process provides a sufficient venue for a grievant to air his contentions in a meaningful way, as it allows the Court to view the full facts and determine if a resignation was coerced while avoiding "the constitutional thicket." *Capul v. City of New York*, No. 19 CIV. 4313 (KPF), 2020 WL 2748274, at *9 (S.D.N.Y. May 27, 2020)(*citing Giglio, supra*); *see also Jaeger v. Bd. of Educ. of Hyde Park Central School Dist.*, 125 F.3d 844 (TABLE), 125 F.3d 844 (2d Cir. 1997); *Stenson v. Kerlikowske*, 2000 WL

---

[4] Note that to the extent that Plaintiff's Complaint can be read to claim a pre-deprivation due process violation, no such claim exists here as Plaintiff admits he voluntarily retired, even despite his allegation that his retirement was coerced, as such claims can be properly addressed in an Article 78 petition. *Capul v. City of New York*, No. 19 CIV. 4313 (KPF), 2020 WL 2748274, at *9 (S.D.N.Y. May 27, 2020); *Giglio v. Dunn*, 732 F.2d 1133 (2d Cir. 1984).

254048, 205 F.3d 1324 (TABLE), 205 F.3d 1324 (2d Cir. 2000); *Giglio v. Dunn*, 732 F.2d 1133 (2d Cir. 1984).

Here, Plaintiff does not allege he filed an Article 78 petition, because he did not file one. Plaintiff's allegations regarding his lodging of a complaint about his "good guy" letter do not touch the clear bar set by the case law as to a Plaintiff's post-deprivation rights.

This failure renders Plaintiff's claim of violation of his due process rights under the fourteenth Amendment untenable before this Court. Accordingly, it should be dismissed.

> B.  *Plaintiff has not stated a "stigma-plus" claim under federal law.*

To assert a stigma plus claim, a plaintiff must allege (1) the defendant made stigmatizing statements, (2) the statements were made in public, and (3) the statements were coupled with a deprivation of another tangible interest, such as employment (the "plus"). *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

> i.     *Defendants' claim was not stigmatizing or public.*

For Defendants May 2021 statement to be considered stigmatizing in context, it must be public, false, and restrict Plaintiff's ability to obtain future employment in his field. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980); *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir. 1977); *Codd v. Velger*, 429 U.S. 624, 628 (1977) (per curiam). Statements which denigrate an individual's professional ability qualify as stigmatizing for the purposes of such a claim only if those statements would serve as an effective roadblock to future employment in their chosen career. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630–31 (2d Cir. 1996).

Neither Defendants Howard or Nalepa, nor any member of the Defendants' Sheriff Department, made a statement which could be considered stigmatizing in the public towards Plaintiff under the standard set forth in *Quinn, supra,* or related case law. The May 2021 letter does not state any untrue facts or sordid accusations, only a brief statement that Plaintiff was under investigation for misconduct at the time of his retirement, and that investigation showed he did commit misconduct. See Ex. A. The letter does not detail the exact facts of Plaintiff's misconduct to DCJS, does not make any accusations that were not evaluated through the aforementioned investigation, and does not call Plaintiff's prior job performance into question. *See* Ex. A. Rather, it only states that facts which are essentially admitted here in the Complaint: Plaintiff was under investigation for misconduct at the time of his retirement, and the results of that investigation once concluded in May of 2021 showed he did not retire in good standing. *See* Ex. A.

More importantly though, the letter was not public. See generally Doc. No. 14, ¶90-101. Plaintiff only alleges that the public can see his name on an internet database list from DCJS listed as "Removal for Cause - 9 NYCRR § 6056.2(h)(2)(b): an employee's resignation or retirement." This is not a statement by Defendants, rather by DCJS, and the database does not provide a copy of the May 2021 correspondence which Plaintiff complains of. Rather, the database only states that Plaintiff resigned or retired while under investigation and was found to have committed misconduct. The type of misconduct, manner of his misconduct, or circumstances of his misconduct are not shared in any public way.

Plaintiff cannot turn his retirement, which he failed to adjudicate in an Article 78 proceeding, into a constitutional matter simply through his say so. He must plausibly allege that a public false statement was made. Here, the alleged defamatory statement is not public nor false, and therefore cannot impugn on his constitutional rights via a stigma plus defamation claim.

        *ii.*     *Plaintiff fails to allege a proper deprivation to plausibly set forth a stigma plus claim.*

Where an individual has already retired at the time of the allegedly defamatory statements, he no longer has a property interest in their job for purposes of a stigma plus claim. *See Dowd v. DeMarco*, 314 F. Supp. 3d 576, 586 (S.D.N.Y. 2018). Generally alleging diminished "job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation" will not plausibly state a claim under the applicable standard. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). Moreover, Plaintiff must not only adequately plead that she has suffered some sort of tangible deprivation, but that tangible deprivation must be plausibly connected to the stigmatizing statements. *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir.2005).

Plaintiff fails the third element of a stigma plus claim, since he has not asserted any cognizable property deprivation, as discussed at length above, coupled with the stigmatizing statement at issue which is apparently the May 2021 letter. Plaintiff had already submitted his retirement and it had been accepted by Defendants in May of 2020, as emphasized in his Complaint, a year prior to the May 2021 letter. It was Plaintiff's sole decision to resign before the results of the investigation into his misconduct. He controverts his own allegation that he was not aware of any investigation into his conduct being initiated prior to the May 2021 letter, by admitting that he was challenged regarding his drinking at the training prior to his resignation. See Doc. No. 14 at ¶64-70. The allegation of ¶96 are plainly belied by the admissions of ¶64-70 of the Complaint, as he includes that he was informed he was seen "drinking" on the job.

Thus, because Plaintiff's voluntary retirement a full year prior was not a property deprivation coupled with the alleged stigmatizing statement, he fails to state a "plus" for a cognizable stigma plus claim. *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994).

III.    Plaintiff's state law defamation claims fails as he has not pled a false defamatory statement was made or that it negatively affected his ability to be gainfully employed.

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). There are no claims of libel[5] or slander in this case, as Plaintiff fails to allege anywhere in his complaint that Defendants May 2021 letter was made public, or its contents were specifically communicated to any other individual during a spoken conversation. *See generally* Doc. No. 14. For non *per se* defamation, a plaintiff must also allege special damages, meaning the loss of something economic or pecuniary. *See Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 272 (S.D.N.Y. 1989). Nothing of the sort is alleged here, and no comment is made of any specific opportunity lost by Plaintiff.[6] Thus, Plaintiff's state law defamation claim can only reasonably be evaluated in the context of defamation per se.

In New York, a statement is defamatory per se only if it falls into one of a few enumerated categories. Given the short and benign nature of Defendants' May 2021 letter, the only category to consider here are false statements which impugn an individual's profession or trade. *Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1077 (S.D.N.Y. 1980). Because Plaintiff is claiming the letter was injurious to his trade or profession, he must plausibly state facts that show the false material was a "substantial factor" in causing others not to want to have an economic or employment

---

[5]    To the extent a loose claim of libel can be wrought from Plaintiff's allegation stating Defendant's May 2021 letter contained false information to DCJS, it easily must fail, as Defendants and DCJS share the common interest privilege. *Liberman v. Gelstein*, 80 N.Y.2d 429, 437, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992); *Conti v. Doe*, 535 F. Supp. 3d 257, 275 (S.D.N.Y. 2021). The common interest privilege renders communicants not liable for potentially defamatory statements if "(a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." *Goldstein v. Cogswell*, No. 85-CV-9256, 1992 WL 131723, at *22 (S.D.N.Y. June 1, 1992).

[6] The speculative interest in one day running for sheriff, which Plaintiff has allegedly been positioning himself to do but taken no specific action regarding since 2018, does not suffice to meet the special damages standard. *See Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994).

relationship with him, in order to survive a motion to dismiss. *Waste Distillation Technology v. Blasland & Bouck Engineers, PC*, 136 A.D.2d 633 (2d Dept. 1988). Courts should decide as a matter of law if a statement is "reasonably susceptible of a defamatory connotation." *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1st Dept. 1976).

Plaintiff fails to sufficiently allege per se defamation as he does not allege he suffered economic or pecuniary harm. *Waste Distillation Technology v. Blasland & Bouck Engineers, PC*, 136 A.D.2d 633 (2nd dept.1988). Plaintiff does not allege he applied for any jobs and was rejected, lost any specific opportunities, or any other employment related issues. Further, Plaintiff had already submitted his retirement prior to May 2021 letter, therefore he no longer had a profession or trade to injure. Ex. A; *see Dowd v. DeMarco*, 314 F. Supp. 3d 576, 586 (S.D.N.Y. 2018). New York's single instance rule also applies, as Defendants statement was made on one occasion to a specific agency. *Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1077 (S.D.N.Y.1980). Plaintiff's Complaint contains no allegations that he specifically lost a business opportunity, a contractual relationship, an employment prospect, or any other tangible thing that could suffice to prove special damages. *See* Fn. 4.

In fact, the opposite is true. Plaintiff does not allege, nor can he allege, that he is prevented from running for Sheriff under the laws of New York, as nothing set forth in the Complaint prevents him from doing that. Sheriff is an elected position and there is no requirement that the individual elected hold police credentials or even a firearm. *See* County Law - CNT § 400. Accordingly, Plaintiff's state law defamation claims should be dismissed.

IV.    Plaintiff fails to state a claim for municipal liability in the facts alleged.

Municipal liability under Section 1983 must be founded upon a nonconclusory allegation that the alleged conduct occurred pursuant to a municipal policy, custom, or practice, or

represented the actions of a final policymaker of the municipality. *Monell v. Department of Social Services*, 453 U.S. 658, 98 S. Wholly conclusory allegations are insufficient to meet the pleading burden under Rule 8 of the Federal Rules of Civil Procedure and under *Iqbal* and *Twombly*. *See Benacquista v. Spratt*, 217 F.Supp.3d 588, 600 (N.D.N.Y. 2016); *McAllister v. New York City Police Dept.*, 40 F.Supp.2d 688, 705 (S.D.N.Y. 1999).

Even after amendment, the allegations against Howard rest on pure boilerplate language. Defendant Howard is indeed the Sheriff, but is not alleged to have sent the letter. Defendant Howard is only claimed to have "caused" the letter to be sent, an allegation which cannot be evaluated because it is conclusory on its face. Regarding Defendant Nalepa, his only action is issuing a letter after the conclusion of an investigation,

Thus, Plaintiff's Monell claim should be dismissed, as it is not plausibly stated and he does not allege any violative customs, policies, or practices by the County which caused a deprivation of a constitutional right.

V.     Plaintiff's "respondeat superior" claim is improper in context and must be dismissed.

It is well settled that a County cannot be held liable on a respondeat superior theory. *See Roe v. City of Waterbury*, 542 F.3d 31, 36-37 (2d Cir. 2008). As to the extent Plaintiff's broad claim of respondeat superior liability can be interpreted as interposed against the County for the circumstances of his retirement, it cannot stand, as the proper vehicle for such a claim is through a Monell violation as discussed above. *See id.*

Plaintiff's claims against Nalepa and Howard are not properly asserted via §1983.

A plaintiff must show personal involvement of an individual defendant in order to advance a Sec. 1983 claim against that individual. *See Zdziebloski v. Town of E. Greenbush*, 336 F. Supp.

2d 194, 201-02 (N.D.N.Y. 2004). Plaintiff simply does not allege that Defendant Nalepa was personally involved in a scheme to cause him to retire.

9 CRR-NY 6056.4 specifically lays out a public police department's requirement to report the status of all individual employment under their command, including updating the DCJS with information about all retirements and removals from employment. *See* 9 CRR-NY 6056.4. The DCJS has a comparable duty to keep up to date and accurate records under this statue. *See* 9 CRR-NY 6056.3. Where an official is forced to take an action because of the existence of laws or policies not of that official's own making, it is the policy itself which is the municipal action in question that a plaintiff is complaining of, not the nondiscretionary action. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

Accordingly, both Defendants Howard and Nalepa are not alleged to have committed any actions beyond those mandated to them by statute, and §1983 claims against them should be dismissed.

## CONCLUSION

Plaintiff's claims fail for multiple reasons, chief among them their conclusory factual basis and Plaintiff's failure to attempt to adjudicate his own rights in the proper venue by filing an Article 78 petition. Instead of taking any steps to right his claimed wrongs, Plaintiff voluntarily retired without ever complaining, and then never took the proper steps in response to his retirement status being changed in May 2021 after the conclusion of Defendant's investigation, if he thought the investigation was concluded wrongly. Accordingly, Plaintiff's federal claims are inadequate and should be dismissed, and this Court should decline to exercise supplemental jurisdiction of his state law claims under 28 U.S.C. § 1367(c).

Dated: July 6, 2022
      East Syracuse, New York

Respectfully submitted,

**THE LAW FIRM OF FRANK W. MILLER**

Frank W. Miller, Esq.

/s/ Giancarlo Facciponte
**Giancarlo Facciponte, Esq.**
**Bar Roll No.:  520126**
Office and Post Office Address
6575 Kirkville Road
East Syracuse, New York 13057
Telephone: (315) 234-9900
Facsimile: (315) 234-9908