UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

WAYNE T. MOULTON,

                        Plaintiff,

    v.                                                       3:22-cv-00340 (AMN/ML)

COUNTY OF TIOGA, NEW YORK; GARY W. HOWARD, individually and in his capacity as Sheriff of Tioga County; and SHAWN J. NALEPA, individually and in his capacity as Tioga County Sheriff's Department Captain of Operations,

                        Defendants.

---

**APPEARANCES:**                                       **OF COUNSEL:**

**SATTER RUHLEN LAW FIRM, PLLC**          **SARAH E. RUHLEN, ESQ.**
217 South Salina Street, 6th Floor
Syracuse, New York 13202

**MEGAN THOMAS LAW, PLLC**              **MEGAN KATHERINE**
220 South Warren Street                          **THOMAS, ESQ.**
Syracuse, New York 13202
*Attorneys for Plaintiffs*

**HANCOCK ESTABROOK, LLP**               **FRANK W. MILLER, ESQ.**
1800 AXA Tower I                                 **GIANCARLO FACCIPONTE,**
100 Madison Street                                  **ESQ.**
Syracuse, New York 13202                  **ROBERT C. WHITAKER, ESQ.**
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On April 11, 2022, Plaintiff Wayne Moulton ("Plaintiff") commenced this action against the County of Tioga, New York, Gary W. Howard, individually and in his capacity as Sheriff of Tioga County, Shawn J. Nalepa, individually and in his capacity as the Tioga County Sheriff's

1

Department Captain of Operations (collectively, "Defendants"), as well as the Tioga County Sheriff's Department ("TCSD"), alleging violations of his constitutional and common law rights. *See* Dkt. No. 1. On June 22, 2022, Plaintiff amended the complaint with permission of the Court. *See* Dkt. No. 14 ("Amended Complaint"). After motion practice, which, *inter alia*, resulted in the dismissal of TCSD from the action, Plaintiff maintains the following claims: (i) a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against all Defendants; (ii) a Fourteenth Amendment "stigma-plus" procedural due process claim pursuant to 42 U.S.C. § 1983 against all Defendants; and (iii) a defamation *per se* claim pursuant to New York law against Defendants Howard and Nalepa. *See* Dkt. No. 57 at 30.[1] Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and costs. *See* Dkt. No. 14 at 29-30.

Trial is set to commence on June 16, 2025. *See* Dkt. No. 61. Presently before the Court are various motions *in limine* from Plaintiff and Defendants, Dkt. Nos. 82, 83, 84, and corresponding responses in opposition, Dkt. Nos. 93, 95. The Court heard further argument from the Parties during the final pretrial conference on June 9, 2025. For the reasons set forth below, Plaintiff's first motion *in limine* is denied, judgment on Plaintiff's second motion *in limine* is reserved, and Defendants' motion *in limine* is granted in part, denied in part, and reserved in part.

## II.  BACKGROUND

The Court assumes familiarity with the full factual background of this case, which it previously set forth in the Memorandum-Decision and Order addressing Defendants' motion for summary judgment. *See* Dkt. No. 57 at 2-7.

---

[1] Citations to Court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

Briefly, this matter concerns the actions that Plaintiff alleges that Defendants took prior to and following Plaintiff's resignation from his position as Undersheriff of TCSD.  Since at least 2019, Plaintiff began publicly expressing interest in running for Tioga County Sheriff, a position held by Defendant Howard.  *See* Dkt. No. 54 at 10-11.  While he ultimately opted not to run, in May 2020, Plaintiff and other TCSD employees were accused of workplace misconduct in the form of drinking on the job.  *Id.* at 14.  This prompted Defendant Howard to issue an ultimatum to Plaintiff: "Retire now or you are fired."  Dkt. No. 14 at ¶¶ 67-68, 70-71; Dkt. No. 55-1 at ¶ 147.  Plaintiff claims that he was the only one to receive such an ultimatum and that the others accused of drinking did not.  *Id*.  Plaintiff maintains that he did not get an opportunity to rebut the drinking allegations through an investigation or disciplinary proceeding.  *See* Dkt. No. 55 at 13.  Believing the accusations were fabricated due to his previously stated intention to run for Sheriff, Plaintiff ultimately opted to resign from his post on May 18, 2020.  *See* Dkt. No. 54 at 14.  Around the same time, Plaintiff filed paperwork with the Division of Criminal Justice Services ("DCJS"), which maintains the New York State Central Registry of Police and Peace Officers, to reflect that he had formally retired from TCSD.  *See* Dkt. No. 52-9 (confirming that Plaintiff's Registry status through at least May 2021 was "retired").

Plaintiff contends that, following his retirement, Defendants commenced an investigation to discover whether Plaintiff had engaged in other workplace misconduct during his employment outside of the May 2020 drinking incident.  *See* Dkt. No. 55-1 at ¶ 97.  According to Defendants, their investigation, which they allege began before Plaintiff retired, uncovered several issues of "incompetence and misconduct by Plaintiff," including, *inter alia*, evidence that Plaintiff had been drinking on the job on other occasions, entered departmental contracts based on personal whims, and improperly spent administrative funds.  Dkt. No. 54 at 18; Dkt. No. 55-1 at ¶ 106.  Based on

3

these findings, in May 2021, Defendants contacted DCJS to have Plaintiff's registry status changed to reflect that Plaintiff had not "retired" from TCSD but was actually "remov[ed] for cause" due to "incompetence and misconduct"—a modification that Plaintiff allegedly had no opportunity to refute.  Dkt. No. 55-1 at ¶¶ 113, 118-21, 130.  This change in registry status revoked Plaintiff's basic training certification, which Plaintiff contends barred any prospect of serving in a law enforcement position, including Sheriff, and harmed his professional reputation.  *See* Dkt. No. 55 at 11, 22, 24.

Based on the above, Plaintiff claims that Defendants (1) retaliated against him because of his previously expressed intention to run for Sheriff, in violation of his First Amendment Rights; (2) violated his due process rights under the Fourteenth Amendment when they denied him the ability to rebut the statements Defendants made to DCJS in May 2021; and (3) defamed him.

## III.  STANDARD OF REVIEW

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citations omitted).  "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context."  *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287).  Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds."  *Luce*, 469 U.S. at 41.  The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion *in limine*.  *See United States v. Pugh*, 162

F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

IV.   DISCUSSION

   A. Plaintiff's Motions *in Limine*

Plaintiff has filed two separate motions *in limine*. The first motion seeks an order excluding the details and findings from the investigation that took place after Plaintiff retired from TCSD in May 2020. *See generally* Dkt. No. 82. The second motion seeks an order finding that Defendant Howard was acting as a Tioga County official with final policymaking authority at all relevant times. *See generally* Dkt. No. 83. The Court addresses both requests in turn.

   1. **Evidence Related to the Post-Retirement Investigation**

Plaintiff's first motion argues that the details and findings from the investigation Defendants undertook after Plaintiff retired should be excluded on two grounds. First, Plaintiff contends that such evidence is "not relevant in determining whether Plaintiff's due process rights were violated." Dkt. No. 82-1 at 5. More specifically, because Plaintiff claims that no disciplinary proceeding was underway when he retired and given that the Parties agree that Plaintiff's registry status was changed and that Defendants Howard and Nalepa caused that change in status, "the details and findings of the investigation should not be admissible." *Id.* Second, Plaintiff argues that the evidence should be excluded because it is prejudicial and would confuse the jury. *Id.* at 5-6 ("This investigation occurred after Plaintiff retired but a juror could think that the investigation occurred prior to Plaintiff's retirement. Such confusion would be highly prejudicial to the Plaintiff because in reality, Plaintiff had no opportunity to defend himself and there was no investigation when he was given the ultimatum to retire or be fired."). In opposition, Defendants contend that the post-retirement investigation "goes directly to Defendants' intent in contacting DCJS," Dkt. No. 94 at 5, which is a component of their defense to Plaintiff's First Amendment claim, and that such evidence is also relevant to counter Plaintiff's contention that the DCJS status change was

5

based on false information or that Defendants communicated with DCJS with reckless disregard for Plaintiff's rights, *id.* at 5-6.  Defendants also argue that, since Plaintiff abandoned his previously asserted constructive discharge claim, this case now hinges almost entirely on circumstances that occurred after Plaintiff's retirement date, which would include the investigation.  *Id.* at 6 ("To preclude such evidence, which caused Defendants to contact DCJS, would distort this trial and prevent key facts needed for the jury to understand what occurred and why.").

The Court agrees with Defendants.  As they point out, the Court has already determined with respect to Plaintiff's First Amendment claim that the allegations uncovered during the post-retirement investigation could lead a reasonable juror to conclude that Defendants had sufficient grounds to notify DCJS and that, if ultimately proven true, may support Defendants' entitlement to a relevant defense.  *See* Dkt. No. 57 at 18-19.  Simply put, the truthfulness of the allegations made to DCJS, which were based at least in part upon the findings from the post-retirement investigation, remains a material dispute that the jury must resolve to decide whether Defendants sought a change in Plaintiff's registry status for legitimate reasons.  Contrary to Plaintiff's assertions, any potential prejudice resulting from this evidence is outweighed by its probative value, especially given that Plaintiff retains the opportunity to establish that the "legitimate reasons" revealed during the investigation were pretextual.  *See* Dkt. No. 57 at 21 ("Since the Court cannot conclude as a matter of law that Defendants ever had a "proper" reason to write to DCJS in May 2021, ***given the material dispute as to the truthfulness of the allegations lodged against Plaintiff***, it similarly cannot conclude as a matter of law that the decision to contact DCJS and alter Plaintiff's Registry status was done for legitimate and not pretextual reasons.") (emphasis added).  Moreover, the falsity of Defendants' statements to DCJS are a core element of Plaintiff's

defamation *per se* claim. *See Jeanty v. Cerminaro*, No. 21-1974-cv, 2023 WL 325012, at *7 (2d Cir. Jan. 20, 2023) (summary order) ("the elements of a defamation claim are a false statement, published without privilege or authorization to a third party, constituting fault") (quoting *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003)). As with Plaintiff's First Amendment claim, the jury must assess the truthfulness of the accusations Defendants made to DCJS, which were based at least in part on the evidence that Plaintiff now seeks to preclude, to resolve Plaintiff's defamation claim. And while Plaintiff's Fourteenth Amendment claim will largely turn on the determination of whether Defendants' decision to contact DCJS in May 2021 was "random and unauthorized," *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006), as discussed in more detail *infra*, if the jury determines that Plaintiff was entitled to a name-clearing hearing, they will also have to decide whether Plaintiff "would not have been reinstated or would have been terminated from subsequent employment regardless of whether or not he received" such a hearing to determine the level of damages to award, *Patterson v. City of Utica*, 370 F.3d 322, 337 (2d Cir. 2004). Since that determination will depend on the truthfulness of what Defendants relayed to DCJS, which included information from the post-retirement investigation, that evidence is similarly relevant to Plaintiff's Fourteenth Amendment claim.

For the foregoing reasons, the Court finds that the details and findings from the post-retirement investigation are relevant to all three of Plaintiff's claims and that admission of such evidence is not unduly prejudicial.[2] Accordingly, the Court denies Plaintiff's first motion *in limine*.

---

[2] Of course, Defendants must satisfy the requirements of the Federal Rules of Evidence in order to admit specific evidence and elicit specific testimony pertaining to this topic. As a general matter, however, the Court does not agree with Plaintiff's argument that this category of evidence is wholly irrelevant or unduly prejudicial.

### 2. Defendant Howard's Status as a Final Policymaker

Plaintiff's second motion requests that the Court find that Defendant Howard was, at all relevant times, an official with final policymaking authority for purposes of Plaintiff's Section 1983 claims against Defendant County of Tioga. *See* Dkt. No. 83-1 at 2-3. In response, Defendants agree that Defendant Howard's status as such "is a legal question the Court should decide 'before the case is submitted to the jury,'" but argue that the motion is premature and request that the Court reserve on deciding it until the close of proof "to determine whether the facts support such a conclusion." Dkt. No. 84 at 7 (quoting *Agosto v. New York City Dept. of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020)).

The Parties are correct that the Court must decide as a matter of law whether Defendant Howard was an official with final policymaking authority prior to submitting the case to the jury. *See Agosto*, 982 F3d at 98. On this question, Plaintiff must "produce[] or point[] to [] evidence or legal authority supporting the conclusion." *Long v. Cnty. of New Orleans*, 540 F. Supp. 3d 344, 352 (W.D.N.Y. 2021); *see also Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) (holding that the question of whether an official is a final policymaker under state law is a question of law on which the plaintiff bears the burden of proof).

On June 3, 2025, Plaintiff submitted a supplemental letter brief at the request of the Court arguing that liability attaches to Defendant County of Tioga through the acts of Defendant Howard over which he had final policymaking authority. Specifically, Plaintiff contends that state and local law afford Defendant Howard final authority over (1) the transmission of information to DCJS on behalf of TCSD; as well as (2) employment-related decisions at TCSD, including how to investigate TCSD employees. *See* Dkt. No. 99 at 1, 3. With respect to the former, Plaintiff cites New York Executive Law § 837-c(d), which states that it is TCSD's duty to "notify [DCJS] if . . . an employee has died, resigned, retired or been dismissed," as well as New York Executive Law

8

§ 845(2)(b), which requires the head of TCSD to "immediately transmit to [DCJS] . . . notification that any [] officer has ceased to serve due to . . . resignation, removal, [or] removal for cause." With respect to the latter, Plaintiff relies on New York County Law § 650, which directs sheriffs to "perform . . . duties as may be prescribed by law and directed by the board of supervisors or the county legislature," and argues that, in the absence of specific local laws circumscribing a sheriff's decision-making regarding employment-related issues, Defendant Howard has final policymaking authority over such decisions. *See* Dkt. No. 99 at 2 (citing *O'Connor v. Barnes*, No. 97-CV-1489, 1998 WL 1763959, at *13 (N.D.N.Y. Mar. 18, 1998)).

Defendants filed a response to Plaintiff's supplemental letter brief on June 5, 2025, acknowledging that Defendant Howard "was responsible for the policy of the Sheriff Department and [had] the ultimate authority regarding enforcement of the same, that much is not in dispute," but nevertheless arguing that he "was not a policymaker for the County during the circumstances alleged." Dkt. No. 100 at 1 (citing *Lin v. Cnty. of Monroe*, 66 F. Supp.3d 341, 351 (W.D.N.Y. 2014)). Most notably, Defendants do not specifically address the level of policymaking authority that Defendant Howard had over the acts by which Plaintiff intends to hold Defendant County of Tioga liable, nor do they contend that someone other than Defendant Howard was vested with final authority over the acts at issue, but instead posit generally that Plaintiff's attempts to impute the actions of Defendant Howard to the County are "thinly veiled claim[s] of *respondent superior*, wrongly asserted against a municipality." *Id.* at 3 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).[3]

---

[3] Defendants also refer to other theories of *Monell* liability that do not appear to be particularly relevant, such as the County's failure to effectively train Defendant Howard, Plaintiff's failure to allege an unconstitutional policy created by the County, and the failure to show that the County was deliberately indifferent to known constitutional deprivations. *See* Dkt. No. 100 at 1-3.

9

At the June 9, 2025 pretrial conference, the Court questioned whether Defendants contested that Defendant Howard had final policymaking authority over the decisions to contact DCJS and decisions such as how to investigate TCSD employees. In response, defense counsel clarified that, at least with respect to his correspondence with DCJS, Defendant Howard likely acted as a final policymaker.

While neither Party's supplemental brief cites to nor discusses *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), that decision and its progeny broadened the concept of the phrase "official policy" with regard to establishing *Monell* liability. Where, as is the case here, a plaintiff does not seek to hold a municipality liable because of the enforcement of an unconstitutional policy,

> the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself. Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers. Thus, ***even a single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality*** in the constitutional deprivation for the purposes of § 1983.

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *Pembaur*, 475 U.S. at 481-82) (emphasis added). So long as it is established that a particular defendant "ha[d] final authority over significant matters involving the exercise of discretion," *Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005) (internal quotation marks omitted), and that the policymaker was "'responsible under state law for making policy in that area of the [municipality's] business,'" *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion)), municipal liability can attach through the acts of that defendant.

Pursuant to *Pembaur*, Plaintiffs have made a strong argument that Defendant Howard was an official with final policymaking authority for purposes of Plaintiff's Section 1983 claims against Defendant County of Tioga. However, at this juncture, the Court will reserve on Plaintiff's second motion *in limine* until after evidence on the issue is presented at trial.

### B. Defendants' Motion *in Limine*

Defendants' motion seeks an order: (i) precluding Plaintiff from introducing a speech language pathology evaluation report from March 20, 2025, from calling its author as a witness, and from introducing any evidence of the medical diagnosis and opinions contained in the evaluation report; (ii) precluding Plaintiff from presenting evidence or argument suggesting constructive discharge, as well as any claim for compensatory damages related to Plaintiff's retirement; (iii) precluding Plaintiff from suggesting that the individual Defendants may be indemnified; and (iv) precluding Plaintiff from requesting a specific dollar amount of damages to the jury. *See generally* Dkt. No. 84. The Court addresses each request in turn.

#### 1. Isabel Jacobs' Testimony and the Speech Language Pathology Evaluation Report

Defendants argue that a speech language pathology evaluation report dated March 20, 2025, which allegedly diagnoses Plaintiff with a speech impediment, as well as any testimony from speech language pathologist Isabel Jacobs, the author of the report, should be precluded. *See* Dkt. No. 84 at 6-9. Defendants claim that prior to sending the report to them on April 16, 2025, Plaintiff had never disclosed Ms. Jacobs as a potential witness or gave any indication that she had evaluated or treated Plaintiff. *Id.* at 7. Since the discovery deadline closed on April 30, 2024—almost a full year prior to Plaintiff's disclosure of the report—and given Ms. Jacob's absence from Plaintiff's Rule 26 disclosures, Defendants argue that this evidence should be excluded as prejudicial, given that Defendants did not have an opportunity to depose Ms. Jacobs or to request

11

documents related to the report. *Id.* at 7-8. In opposition, Plaintiff states that he "no longer intends to call the Speech Language Pathologist" at trial but reserves the right to introduce the report as relevant evidence. *See* Dkt. No. 93 at 4.

Defendants' motion has been partially mooted by Plaintiff's representation that he will not call Ms. Jacobs as a witness at trial. With respect to the remainder of the motion, the Court will preclude Plaintiff from introducing the speech language pathology evaluation report or its contents.

Plaintiff proffers no explanation for why this report was obtained and disclosed to Defendants almost a year after the close of discovery and on the eve of trial, even though it was incumbent on him to provide such an explanation. "The party that failed to comply with its discovery obligations bears the burden of proving that its failure was both substantially justified and harmless." *Paulus v. Holimont, Inc.*, 315 F.R.D. 13, 17, 18 (W.D.N.Y. 2014) ("Rule 37(c)(1) is designed to prevent the practice of 'sandbagging' an adversary with new evidence . . . yet, allowing for plaintiffs to present this eleventh hour expert witness would be exactly that—sandbagging . . . [which] would fly in the face of the purpose of Fed. R. Civ. P. 26(a)(2).") (internal quotations and citations omitted). Plaintiff's opposition is devoid of any attempt to explain why this late disclosure is substantially justified or harmless, and instead Plaintiff states as a general matter that the report is relevant to rebutting Defendants' contention that Plaintiff was intoxicated on multiple occasions. *See* Dkt. No. 93 at 4-5. While that may be true, it does not excuse Plaintiff's flagrant violation of the discovery rules. Absent preclusion, Defendants would be severely prejudiced by having the jury receive an unrebutted report containing a medical diagnosis. Defendants have had no opportunity to depose the report's author, nor have they had time to

consider whether to retain a rebuttal expert to contest the report's contents. The Court therefore excludes the report pursuant to Fed. R. Civ. P. 37(c)(1).[4]

Accordingly, this portion of Defendants' motion *in limine* is granted.

### 2. Evidence Regarding Constructive Discharge and Compensatory Damages

Defendants contend that, because Plaintiff has abandoned his constructive discharge claim, he should be precluded from "arguing, presenting and introducing any evidence regarding any alleged lost wages . . . since Plaintiff concedes he voluntarily retired." Dkt. No. 84 at 10 (citing, *inter alia*, *Bertuzzi v. Copiague Union Free Schl. Dist.*, No, 17-CV-4256, 2025 WL 948347, at *2-3 (E.D.N.Y. Mar. 28, 2025)). Defendants also argue in the alternative that, if Plaintiff is permitted to present evidence of compensatory damages, he "should be precluded from arguing a claim for lost wages from the date he resigned through May 18, 2021, when DCJS first altered Plaintiff's registry status." *Id.* Plaintiff opposes this portion of the motion, asserting that "Plaintiff has never made a constructive discharge claim," and that any compensatory damages do not stem from his May 2020 departure from TCSD, but rather "from the fact that [Plaintiff] was blacklisted from ever serving in a law enforcement capacity after Defendants induced the DCJS to decertify him on the basis of false information." Dkt. No 93 at 5.

First, the Court acknowledges the prevailing view of the district courts in the Second Circuit that a plaintiff cannot recover post-resignation back pay or other purported lost income related to previous employment if he or she voluntarily resigns. *Bertuzzi v. Copiague Union Free Sch. Dist.*, No. 17-CV-4256, 2025 WL 948347 at *2 (E.D.N.Y. Mar. 28, 2025); *see also Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 300 (S.D.N.Y. 2008) (citing cases). Thus, Defendants

---

[4] The Court also notes that Plaintiff does not make clear, nor is it apparent, how Plaintiff could lay an adequate foundation to admit the speech language pathology evaluation report without the testimony of Ms. Jacobs. *See* Fed. R. Evid. 803(6).

are correct that Plaintiff cannot recover lost wages related to his May 2020 retirement from TCSD (*i.e.*, back pay).  However, since Plaintiff has made clear that he is not pursuing a constructive discharge claim, that line of cases is inapposite.  Instead, Plaintiff is seeking damages in the form of future lost earnings based on his inability to obtain comparable employment after the alteration of his registry status in May 2021.  *See, e.g.*, *Ojeda v. Metro. Transp. Auth.*, 477 F. Supp. 3d 65, 82 (S.D.N.Y. 2020) ("[B]ecause Plaintiff's claims for future lost wages were grounded solely in his injury, and not in his termination, Plaintiff would be permitted to seek future lost wages based on his injury."); *Colon v. City of N.Y.*, No. 09-CV-0008, 2012 WL 691544, at *13 (E.D.N.Y. Feb. 9, 2012) (awarding lost earnings where plaintiffs were wrongfully arrested and accordingly placed on a list that barred their business from obtaining liquor, cigarette, and lottery licenses).  Therefore, the Court finds that Plaintiff's failure to plead a constructive discharge claim does not bar outright his ability to collect compensatory damages, and Plaintiff will be permitted to request monetary damages related to his inability to obtain employment after May 2021.[5]

Accordingly, the Court grants in part and denies in part this portion of Defendants' motion *in limine*.

### 3. References to the Individual Defendants' Indemnification

Defendants argue that any reference to the possible indemnification of Defendants Howard and Nalepa should be precluded because, if introduced, the jury may "not make a careful effort to assess liability or to determine Plaintiff's alleged damages." Dkt. No. 84 at 11.  Defendants equate this request to one under Fed. R. Evid. 411, which prohibits the admission of evidence pertaining

---

[5] Of course, Plaintiff still has the burden to present specific proof of actual injuries resulting from the deprivation of his constitutional rights.  "[D]amages may not be awarded based upon the abstract value of the right itself." *Colon*, 2012 WL 691544, at *10 (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978) for the proposition that "the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights").

to a defendant's liability insurance. *Id.* Plaintiff opposes this portion of the motion, arguing that "evidence of Defendants' indemnification is relevant and admissible" if Defendants plan to offer proof regarding their financial circumstances in order to limit damages. Dkt. No. 93 at 6 (citing *Coleman v. Durkin*, 585 F. Supp. 3d 208, 217 (N.D.N.Y. 2022)).

The Court adopts the reasoning set forth in *Coleman* and agrees that "indemnification would not be relevant to any issue before the jury and would run a significant risk of unfairly prejudicing Defendants," except where Defendants have submitted evidence regarding their personal financial circumstances to limit their damages. 585 F. Supp. 3d at 217 (citing *Nunez v. Diedrick*, No. 14-CV-4182, 2017 WL 4350572, *2 (S.D.N.Y. June 12, 2017)); *see also Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("[A] fact-finder can properly consider the existence of [an indemnity] agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded")).

Accordingly, this portion of Defendants' motion *in limine* is granted, except that Plaintiff will be permitted to introduce such evidence in the event that Defendants proffer evidence regarding their financial resources.

### 4. References to a Specific Dollar Amount of Damages

Finally, Defendants argue that Plaintiff must be precluded from suggesting a specific dollar amount of damages to the jury, relying on precedent that emphasizes that doing so is generally "disfavored." Dkt. No. 84 at 12 (citing *Phillips v. City of New York*, 871 F. Supp. 2d 200, 208 (E.D.N.Y. 2012)). Plaintiff opposes this portion of the motion, requesting that the Court exercise its discretion to allow Plaintiff to request a specific dollar amount, and arguing that the damages amount he will request "is based on the actual damages [Plaintiff] has suffered." *See* Dkt. No. 93 at 6. Plaintiff also argues that he should be entitled to do the same if the jury decides to award him punitive damages. *Id.* ("[I]n order for the punitive damages to be effective, they must be

substantial, and the jury is not in a position to understand that number unless it is given that information").

Although the Second Circuit has stated that "specifying target amounts for the jury to award is disfavored," *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996), the Second Circuit has also stated that "[i]t is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Lightfoot*, 110 F.3d at 912 (citations omitted).

At this juncture, the Court reserves on this portion of Defendants' motion *in limine*.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's first motion *in limine*, Dkt. No. 82, is **DENIED**, as set forth in Section IV(A)(1) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that judgment on Plaintiff's second motion *in limine*, Dkt. No. 83, is **RESERVED**, as set forth in Section IV(A)(2) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendants' motion *in limine*, Dkt. No. 84, is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**, as set forth in Section IV(B) of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 13, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge