

**Robert C. Whitaker, Jr.**
rwhitaker@hancocklaw.com

July 14, 2025

**Via ECF**
United States District Court Judge
Hon. Anne M. Nardacci
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

  Re: Moulton v. Tioga Co. et al. / Case No. 3:22-cv-340-AMN-ML

Dear District Judge Nardacci:

  As directed by the Court, I write on the affirmative defense of qualified immunity in furtherance of Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) made during trial.

**The Applicable Standard**

  Qualified immunity is an affirmative defense that shields public officials, including law enforcement officers, from civil liability for claims arising under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "'protects all but the plainly incompetent or those who knowingly violate the law.'" *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).  In practice, this means that a government official will be entitled to qualified immunity if either (1) the official did not violate any constitutional rights, *or* (2) those constitutional rights were not "clearly established" at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

  A constitutional right is "clearly established" only if there is "controlling authority or a robust consensus of cases of persuasive authority" from the Supreme Court or Second Circuit that recognizes the right.  *McKinney v. City of Middletown*, 49 F.4th 730, 738-39 (2d Cir. 2022) (internal quotation marks, alterations and citations omitted).  This means that existing and controlling legal precedent must make the "constitutional question beyond debate."  *Id.* at 739 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).  Stated differently, "[t]o overcome qualified immunity, the alleged right *must have been clearly established by Second Circuit or Supreme Court precedent at the time of the allegedly illegal action*." *Agosto v. New York City Dept. of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (emphasis added and citation omitted); *see Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 367 (2d Cir. 2021) (*only* "Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established").



Whether a constitutional right has been "clearly established" does not deal in generalities. *See McKinney*, 49 F.4th at 738-39 (observing that courts "must be careful 'not to define clearly established law at a high level of generality'" because the "dispositive question" is "whether the violative nature of particular conduct is clearly established."). There must therefore exist Supreme Court or Second Circuit precedent that informs the public official that the *specific conduct* at issue is unlawful. *See, e.g., Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (plaintiff "must identify a case that put [the officer] on notice that *his specific conduct* was unlawful"); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts...not to define clearly established law at a high level of generality....This inquiry must be undertaken *in light of the specific context of the case*, not as a broad general proposition.") (emphasis added) (internal quotation marks and citations omitted); *McKinney*, 49 F.4th at 738-39 (requires "controlling authority or a robust consensus of cases of persuasive authority [that] have recognized the right at issue.").

Moreover, even if a clearly established constitutional right is violated, qualified immunity still precludes liability if it was "objectively reasonable" for the person to believe their action was lawful based on the information they had at the time. *Taravella v. Town of Wolcott*, 559 F.3d 129, 135-36 (2d Cir. 2010) (reversing the district court and holding that defendant was entitled to qualified immunity against due process claim where contractual ambiguity regarding whether plaintiff was entitled to a hearing made the conduct at issue objectively reasonable). "Because the test is an objective one, the officer's subjective beliefs [about their actions] are irrelevant." *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001). Thus, if "a reasonable officer could have believed his or her actions were lawful" they are entitled to qualified immunity even if "officers of reasonable competence could disagree on the legality of the defendant's actions." *Id.* (internal quotation marks, alterations and citations omitted).

At trial, Plaintiff asserted that two constitutional rights were violated. First, Plaintiff argued that his First Amendment right to free speech was violated. Second, Plaintiff alleged that his procedural right to due process under the Fourteenth Amendment was violated. As previously stated during the Rule 50(a) motion, Plaintiff failed to present sufficient evidence to establish that a constitutional right was violated. In addition, there was not—and is not—precedent from the Supreme Court or Second Circuit that clearly established that Defendants' actions were constitutionally infirm. Accordingly, even assuming *arguendo* that a constitutional violation did occur, Defendants are entitled to qualified immunity because their actions were objectively reasonable considering existing, controlling precedent.

**<u>Plaintiff's First Amendment Claim</u>**

<u>*Expressing a Private Intent to Run for Future Office Does Not Constitute Speech on a Matter of Public Concern*</u>

At trial, Plaintiff admitted that he never formally announced nor took any action to initiate a candidacy to run for Tioga County Sheriff. Rather, Plaintiff alleged that for decades—since the late 1990s—he often spoke about his desire to one day run for Sheriff. Plaintiff



testified that he told Defendant Sheriff Gary Howard ("Sheriff Howard") and others that he would not run against Sheriff Howard and would campaign for the position after Sheriff Howard retired. At trial, it was undisputed that, *even to this day*, Plaintiff never initiated a campaign against Sheriff Howard; made any public statement questioning or challenging Sheriff Howard's qualifications, policies, or competency to hold the position; nor told Sheriff Howard he would run against him.[1]

      Plaintiff's expression of a desire to one day run for Sheriff is not a matter of public concern and therefore is not protected speech under the First Amendment. Numerous courts have held that merely announcing one's candidacy to run for office, which goes <u>*further*</u> than Plaintiff's vague expression of some future intent to run for office, is not by itself a matter of public concern and, therefore, not protected by the First Amendment. *Greenwell v. Parsley*, 541 F.3d 401 (6th Cir. 2008) (holding that a Sheriff's termination of Deputy Sheriff because he announced candidacy to run against him did not violate the First Amendment and merely announcing one's candidacy is not a matter of public concern); *Carver v. Dennis*, 104 F.3d 847, 852 (6th Cir. 1997) (affirming dismissal of 1983 claim where plaintiff was fired because she announced her candidacy to run against her boss for the County Clerk position and holding that announcing one's candidacy to run for office is not a matter of public concern); *Keating v. Evans*, No. 10-15040, 2011 WL 3472706, at *3 (E.D. Mich. Aug. 9, 2011) (dismissing plaintiff's 1983 claims and holding that police officer's candidacy to run for Sheriff challenging the current Sheriff was not protected speech on a matter of public concern); *Schmidt v. Contra Costa Cnty.*, No. C 05-197 VRW, 2011 WL 13244831, at *2-3 (N.D. Cal. Feb. 22, 2011), *aff'd on other grounds*, 693 F.3d 1122 (9th Cir. 2012) (holding that candidacy for political office is not constitutionally protected speech because it does not address a matter of public concern).

      Here, Plaintiff's speech is even more removed from being a matter of public concern as he did not even launch a campaign for office. Accordingly, Plaintiff's speech was plainly *not* on a matter of public concern (a required element of any First Amendment retaliation claim) and thus is not entitled to constitutional protection. Defendants are therefore entitled to judgment as a matter of law under Rule 50 because Plaintiff failed to establish that a constitutional right existed in the first place and his 1983 claims must be dismissed. *Greenwell*, 541 F.3d at 404; *Carver*, 104 F.3d at 852; *Wilbur v. Mahan*, 3 F.3d 214, 218-19 (7th Cir. 1993) (dismissing 1983 First Amendment retaliation claim and holding that the Sheriff lawfully placed the Deputy Sheriff he appointed on unpaid leave after launching a campaign to run against him); *see Foote v. Town of Bedford*, 642 F.3d 80, 86-87 (1st Cir. 2011).

---

[1] Plaintiff testified at trial that sometime after he retired—to avoid pending discipline for drinking alcohol on duty—he privately told unidentified friends that he no longer felt a need to wait to run for Sheriff until after Sheriff Howard retired. However, as previously stated, <u>zero</u> evidence was introduced at trial indicating that Sheriff Howard or Shawn Nelepa ("Nalepa") knew of this alleged statement. Defendants cannot have retaliated against Plaintiff for statements of which they had no knowledge. These undisputed facts not only support the application of qualified immunity, but also reinforce Defendants' Rule 50(a) motion on the broader ground that there is such a complete lack of evidence supporting the verdict that the Jury's findings can only be said to have resulted from speculation and conjecture, not competent evidence. *See Deters v. Lafuente*, 368 F.3d 185, 190 (2d Cir. 2004) (plaintiff's speculation about defendant's motivation cannot support a First Amendment retaliation claim); *Monz v. Rocky Point Fire Dist.*, 519 F. App'x 724 (2d Cir. 2013) (affirming the District Court's Rule 50(a) decision vacating jury verdict for alleged 1983 violations where plaintiff's claims were rooted in speculation and not legally competent evidence).

3

## *No Controlling Precedent Clearly Establishes That Defendants' Conduct Was Unconstitutional*

Plaintiff's counsel *admitted* during oral argument on Defendants' Rule 50(a) motion that there is no Second Circuit precedent addressing whether Plaintiff's speech expressing a future intent to run for office was constitutionally protected. Plaintiff is correct as the uncertainty of the issue has been specifically noted by the Second Circuit. *See Castine v. Zurlo*, 756 F.3d 171, 175-76 (2d Cir. 2014) (assuming without deciding that plaintiff's act of running for elective public office was a form of protected speech and holding that "we need not now decide whether [plaintiff's] speech satisfies all the requirements to qualify as protected [speech]" on a matter of public concern).[2] This uncertainty, coupled with substantial authority holding that such speech is *not* protected as detailed above, establishes that the alleged constitutional right was not clearly established. Therefore, qualified immunity applies, and Plaintiff's 1983 claims must be dismissed. *Agosto*, 982 F.3d at 97 (holding that because there was no clear binding precedent on whether plaintiff's speech addressed a matter of public concern he was entitled to qualified immunity); *Montero v. City of Yonkers,* 890 F.3d 386, 402-03 (2d Cir. 2018) (holding that because "the specific question of whether the plaintiff's alleged union remarks were protected by the First Amendment was not beyond debate" when the alleged retaliation occurred, defendants were entitled to qualified immunity); *Fierro v. City of New York*, 341 F. App'x 696, 698 (2d Cir. 2009) (reversing the District Court and holding that qualified immunity applied where it was not clearly established that the speech at issue was protected even if defendant's actions were patently wrongful); *McKee v. Reuter*, 758 F. App'x 564, 571 (8th Cir. 2019) (holding that "there is no clearly established First Amendment right to run for office" and dismissing 1983 First Amendment claims based on qualified immunity); *see Chesser v. Sparks*, 248 F.3d 1117, 1123-1124 (11th Cir. 2001) (qualified immunity applied where plaintiff was fired for making a statement about the county's alleged failure to pay wages in violation of federal law but there was no clear binding legal authority indicating such speech was a matter of public concern).

---

[2] Although Plaintiff cited *Enders v. Boone*, 658 F. Supp. 3d 70, 86-87 (N.D.N.Y. 2023) during the Rule 50(a) conference, that case is insufficient to overcome Defendants' qualified immunity defense. As a threshold matter, *Enders* does not clearly establish the unconstitutionality of the conduct at issue because it is a district court decision, not binding authority from the Supreme Court or the Second Circuit. Moreover, *Enders* was decided in February 2023, *i.e.*, well after the events underlying this lawsuit, rendering it irrelevant for purposes of determining whether the law was clearly established at the time of the alleged conduct.

In addition, *Enders* does not support Plaintiff's argument insofar as the parties did not dispute (and therefore did not substantively brief) whether the speech at issue was a matter of public concern, an issue which *is* disputed here. In any event, the district court observed that "campaigns for public office, generally speaking, are *likely* to relate to matters of political, social, or general interest to the community…" *Id.* (emphasis added). Thus, it merely affirms that the law is unsettled regarding whether announcing one's candidacy alone is a matter of public concern, further underscoring that qualified immunity applies here.

*Sheriff Howard and Nalepa's Actions Were Objectively Reasonable*

It was undisputed at trial that Plaintiff retired to avoid being fired for drinking alcohol on duty. More specifically, it is undisputed that Sheriff Howard received a complaint from a police officer that Plaintiff was drinking alcohol on duty during lunch with two subordinates. Sheriff Howard immediately investigated the incident next day, May 1, 2020. During the investigation, both subordinate officers admitted that they consumed alcohol minutes earlier with Plaintiff at Plaintiff's home. Both Sheriff Howard and non-party Captain Richard Hallett observed signs that Plaintiff was intoxicated when he was questioned on May 1, 2020. Thus, Sheriff Howard directed Captain Hallet to drive Plaintiff home and told Plaintiff he was being involuntarily placed on paid leave and if he did not retire during that time, he would be fired. Although Plaintiff denied he drank on duty, Plaintiff did not contest these facts at trial. In fact, Plaintiff admitted at trial that <u>Plaintiff</u> believed Sheriff Howard truly thought that Plaintiff was intoxicated on May 1, 2020, accused Plaintiff of lying and told Plaintiff he must retire, or he would be fired. Plaintiff also admitted that when Captain Hallett drove Plaintiff home on May 1, 2020, Captain Hallett told Plaintiff that it was obvious Plaintiff had been drinking alcohol. Plaintiff testified that he retired to avoid the Sheriff firing him.

These uncontested facts make the information contained in Sheriff Howard's letter to the DJCS in May 2021—stating that Plaintiff retired while facing a disciplinary process for misconduct—unequivocally true as a matter of law and Plaintiff's speculative argument at trial was insufficient to establish otherwise, and dismissal of all claims is required as previously stated during the Rule 50(a) motion. Regardless, these undisputed facts coupled with the lack of precedent from the Supreme Court or the Second Circuit that clearly established that Defendants actions were prohibited, makes their actions objectively reasonable and entitles them to qualified immunity.

It was objectively reasonable for Sheriff Howard and Nalepa to believe their actions were lawful when they sought the advice and guidance of the Division of Criminal Justice Services ("DCJS") in 2021 about Plaintiff's retirement status. The undisputed testimony at trial was that Nalepa read a publication in or around April 2021 indicating there was a pending change in the law because law enforcement was not properly reporting members who retired while facing potential discipline for misconduct.[3] Thus, Nalepa spoke with Captain Hallett and Sheriff

---

[3] On April 19, 2021, the "New York State Professional Policing Act (PPA) of 2021" was signed into law by then Governor Andrew M. Cuomo. With respect to that law, material published by the DCJS stated as follows:

> Historically, when an officer separated from a department after a disciplinary hearing, or resigned or retired while disciplinary proceedings were pending, there was no reporting mechanism in place to ensure the invalidation of the officer's training certificate. These 'certified' officers are attractive candidates to other departments for a variety of reasons, but they are hired in relative anonymity with respect to the misconduct leading to their prior separation. The proposed regulations will seek to prevent these occurrences.

A true and accurate copy of that document is annexed hereto as **Exhibit "A"** and is also publicly accessible at https://www.criminaljustice.ny.gov/FINAL%20Summary%20of%20Text%20of%20Rule%20-%206000%20and%206056.pdf.

Howard to express his concern that the circumstances surrounding Plaintiff's retirement were not properly reported to the DCJS. After discussing the issue, Nalepa was directed by Sheriff Howard to contact the DCJS to explain what occurred and obtain its advice on what, if any, action should be taken to comply with the law's reporting obligations. Following several phone calls and emails with the DCJS, Nalepa prepared a letter that followed DCJS's guidance and was subsequently signed by Sheriff Howard. There was no evidence that Nalepa wanted to run for Sheriff or had any malicious or improper intent. These facts are uncontested on the trial record.

It was objectively reasonable for Nalepa to raise his concern to Sheriff Howard, contact DCJS for guidance, draft a letter for the DCJS and subsequently Sheriff Howard's review, and transmit that letter which was pre-approved by DCJS and signed by Sheriff Howard. Moreover, it was objectively reasonable for Sheriff Howard to believe that directing Nalepa to contact the DCJS for guidance and to sign a letter that was reviewed and pre-approved by the DCJS. In fact, proactively seeking the DCJS's guidance before taking any action is direct and compelling evidence of good-faith and firmly establishes that Nalepa and Sheriff Howard not only could have believed, *but did believe*, their actions were lawful and consistent with state requirements as communicated by the DCJS. Thus, they are entitled to qualified immunity. *See Cerrone*, 246 F.3d at 203; *Taravella*, 559 F.3d at 135-36 (reversing the district court and holding that defendant was entitled to qualified immunity against due process claim where contractual ambiguity regarding whether plaintiff was entitled to a hearing made the conduct at issue objectively reasonable); *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context") (internal quotation marks and citations omitted).

**Plaintiff's Due Process Claim**

*Plaintiff's Due Process Claim Is Not Constitutionally Cognizable*

Preliminarily, as previously stated during the Rule 50(a) Plaintiff's Fourteenth Amendment "stigma-plus" procedural due process claim fails because Plaintiff failed to demonstrate by a preponderance of the evidence that Defendants had (1) the power to provide process to him and (2) the power to inflict an alleged deprivation. *See, e.g.*, *Walker v. Fitzpatrick*, 814 F. App'x 620, 625 (2d Cir. 2020) ("Walker's claim for damages based on her alleged loss of a protected liberty interest without due process of law cannot lie against defendants who had neither the power to provide process to her nor the power to inflict the deprivation") (citing *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005)). These powers fell solely and squarely within the statutory and regulatory authority of the DCJS. *See Ferretti v. New York State Division of Criminal Justice Services, et al*, Index No. 909271-23 (Sup. Ct., Albany County, filed July 24, 2023).[4] Indeed, as the *Ferretti* trial court recognized:

> New York statute clearly gives to DCJS the responsibility for both (1) certifying police officers (*see* Executive Law § 841 [3]); and (2) the maintenance of a permanent registry for each police officer, including the investigation and removal of police officers

---

[4] For the Court's convenience, a true and accurate copy of this decision is annexed hereto as **Exhibit "B."**

6

who are no longer eligible for certification upon their removal for cause under General Municipal Law § 209-q (see Executive Law § 845 [3] [a], [b]).

*Id.*[5]

Here, Plaintiff failed to offer any evidence at trial (much less a preponderance of the evidence) that Defendants had the power to revoke Plaintiff's certification or provide a name-clearing process. The authority to certify, decertify, investigate, or remove a police officer from the statewide law enforcement registry lies *solely* with the DCJS, not with local officials who are mandated by law to comply with Executive Law § 845(2). Accordingly, any alleged injury Plaintiff attributes to the revocation or limitation of his ability to use his law enforcement certification falls squarely outside Defendants' authority. Plaintiff's stigma-plus claim is simply not constitutionally cognizable under binding Second Circuit precedent.

*No Controlling Precedent Clearly Establishes That Defendants' Conduct Was Unconstitutional*

Defendants are also entitled to qualified immunity against Plaintiff's due process claim unless their actions violated his "procedural due process rights in a manner that *every reasonable official* would have understood…violated that right." *Looney v. Black*, 702 F.3d 701 (2d Cir. 2012) (emphasis added) (internal quotation marks and citations omitted).

At trial, it was undisputed that Plaintiff was a political appointee who was not protected by Civil Service Law or a union contract. Rather, Plaintiff served at the Sheriff's discretion and his employment was terminable at-will.[6] Thus, Plaintiff had no property or liberty interest in his continued employment with the County, nor the reporting of information related to the circumstances by which he retired to the DCJS as required by Executive Law § 845 (2). *See Looney*, 702 F.3d at 708-09 (reversing the District Court and holding that qualified immunity precluded due process claims by plaintiff who was reduced to part-time status and not reappointed to his full-time position where he had no statutory or contractual protections for the job). As set forth above, under state law, because the DCJS is the entity with the authority to change Plaintiff's registry status, his proper remedy was to file an Article 78 challenging the DCJS's action. *See Kitto v. City of Albany*, 213 A.D.3d 1165 (3d Dep't 2023); *Aufiero v. New York State Division of Criminal Justice Services*, 173 A.D.3d 1320 (3d Dep't 2019).

---

[5] *See also Kitto*, 213 A.D.3d at 1170 ("Pursuant to Executive Law § 845 (2) (a), police departments **must** notify DCJS when officers in their employ cease to serve, including whether the cessation was 'due to a leave of absence, resignation, removal, removal for cause, or removal during a probationary period'") (emphasis added).

[6] This is also true as a matter of law. *See* NY Civil Service Law § 41(b); *Mullahey v. Zurlo*, No. 16-cv-0041, 2017 WL 530523, at *3 (N.D.N.Y. Feb. 9, 2017) (Undersheriff is an exempt/management at-will appointed position under County and NYS Civil Service Law); *Amico v. Erie Cnty. Legislature*, 36 A.D.2d 415, 421 (4th Dept. 1971) (holding that "it is clear" that NY Civil Service Law § 41(b) exempts an Undersheriff from the protections of the Civil Service Law).

Even if the Court disagrees with the above legal authority, it establishes that Plaintiff did not have a clearly established legal right to a hearing before Defendants sent a letter to the DCJS to accurately reflect that Plaintiff retired while facing a disciplinary process by which he would be fired for serious misconduct. *See Looney*, 702 F.3d at 701; *White Plains Towing Corp. v. Patterson*, 991 F.2d 1048, 1064 (2d Cir. 1993) (defendants were entitled to qualified immunity against due process stigma plus claim where the relationship was "terminable at will" and it was unclear whether a name-clearing hearing was required before termination).

The Second Circuit's decision in *Mudge v. Zugalla*, 939 F.3d 72 (2d Cir. 2019) is particularly instructive. There, a former public-school teacher alleged a procedural-due-process violation on the theory that the district's actions deprived him of the "meaningful use" of his state-issued teaching license at a new job. The Court held that *even if* such an interest existed, the right was not "clearly established" because neither the Supreme Court nor the Second Circuit had ever recognized a constitutional right to the meaningful use of a professional license. *See id.* at 80.

The same defect undermines Plaintiff's claim here for precisely the same reason. No decision of the Supreme Court or Second Circuit has recognized a constitutionally protected right to the "meaningful use" of a DCJS-issued law-enforcement certification. Plaintiff's claim cannot overcome qualified immunity for precisely the reason articulated in *Mudge*. Nor is there any binding precedent that required Defendants to provide a hearing to Plaintiff related to the information Sheriff Howard and Nalepa reported to the DCJS. Quite the opposite, there is substantial authority that Plaintiff is not entitled to such a hearing, and his remedy was to file an Article 78 proceeding. *Kitto*, 213 A.D.3d at 1170-71; *Aufiero*, 173 A.D.3d at 1321-22; *see Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 881-882 (2d Cir. 2001) (dismissing 1983 claim where plaintiff failed to file an Article 78 proceeding which was available); *Nenninger v. Vg. of Port Jefferson*, 509 Fed. App'x 36, 39 n.2 (2d Cir. 2013) (plaintiff's due process claim fails because he did not file an Article 78 proceeding); *Deperno v. Town of Verona*, No. 10-cv-450, 2011 WL 4499293, at *7 (N.D.N.Y. Sep. 27, 2011) (the availability of an Article 78 proceeding "precludes a finding that the defendants' conduct violated plaintiff's rights of procedural due process under the Fourteenth Amendment").

Further, given the above law and Plaintiff's at-will employment status, it was objectively reasonable for Defendants to believe that such a hearing was not required before reporting to DCJS the circumstances by which Plaintiff retired nor to provide Plaintiff a hearing after it was reported. *White Plains Towing Corp.*, 991 F.2d at 1064 (defendants were entitled to qualified immunity against due process stigma plus claim where the relationship was "terminable at will" and it was unclear whether a name-clearing hearing was required before termination). In fact, making such a report was required by New York State law. *See* 9 NYCRR § 6056.2 and 6056.4.

**Qualified Immunity Extends to Plaintiff's Defamation Claim**

Defendants are also entitled to qualified immunity from Plaintiff's defamation claim. "New York courts have used the terms 'qualified privilege' and 'qualified immunity' in defamation cases without distinguishing between them." *Peters v. Baldwin Union Free Schl.*

8

*Dist.*, 320 F.3d 164, 169 n. 4 (2d Cir. 2003).  Qualified immunity/privilege under New York law precludes liability against even defamatory statements if made between individuals with a common interest.  Thus, a former employer's communication regarding a plaintiff's job qualifications, fitness and professional conduct with a government agency is entitled to qualified immunity/privilege due to their common interest in the subject matter.  *Croy v. A.O. Fox Memorial Hosp.*, 68 F. Supp. 2d 136, 144-45 (N.D.N.Y. 1999) (granting motion to dismiss defamation action based on qualified immunity because the employer and state agency had a common interest in sharing information regarding plaintiff's prior employment and misconduct).

Moreover, at trial Plaintiff presented <u>zero</u> evidence of spite or ill will by Sheriff Howard or Nalepa, nor any knowledge on their part that the alleged defamatory statement was knowingly false, much less that such malicious intent was the "one and only cause for the publication" as required to state a viable defamation claim.  *Huntermann v. City of Yonkers*, No. 95-civ-1276, 1997 WL 527880, at * 9 (S.D.N.Y. Aug. 25, 1997) (quoting *Stukuls v. State*, 42 N.Y.2d 272, 282 (1977)).   Rather, as stated during initial Rule 50(a) motion, Plaintiff relied purely on speculation, conjecture and argument that the statement was false and based on malicious intent, which is insufficient as a matter of law.  *Id.* (dismissing police officers 1983 and defamation claims and holding that conclusory allegations and speculation are insufficient to defeat qualified immunity/privilege which precludes defamation claim based on statements of alleged misconduct made to prospective employers regarding plaintiff's prior job performance); *see Chao v. Mount Sinai Hosp.*, 2010 WL 5222118, at *15 (S.D.N.Y. Dec. 17, 2010) (dismissing plaintiff's defamation claim and holding that the alleged defamatory statements related to plaintiff's job performance by former employer was "protected by qualified immunity" because the statements regarding plaintiff's job performance/misconduct were made to those with a common interest in such information).

### Qualified Immunity Precludes *Monell* Liability Against the County

Preliminarily, the County notes that although the Jury was instructed on the elements of a municipal liability claim,[7] that claim was not included on the verdict form that was provided to

---

[7] As an important aside, the Court instructed the Jury that if it found liability as to the individual Defendants, it was necessarily required to find against the County. *See* Dkt. No. 117 at Point V(3). Although the Court appears to have drawn certain language from the Ninth Circuit's *Manual of Model Civil Jury Instructions*, it omitted the following critical language that is contained in the Ninth's Circuit *Model Instruction*, which states:

> "If you find that plaintiff … has proved each of these [*Monell*] elements, **and** if you find that plaintiff … has proved all the elements plaintiff … is required to prove under [the remaining substantive instructions] …, your verdict should be for plaintiff….  If, on the other hand, plaintiff … has failed to prove any one or more of these elements, your verdict should be for defendant …."

Ninth Cir. Model Instruction 9.6 (cleaned up and emphasis added). Instead, the Court directed a finding against the County if liability was found as to Defendants, without having the Jury consider, *inter alia*, the entirely separate "moving force" element. *See* Dkt. No. 117 at Point V(3).

In deleting the above quoted language from the instruction that was ultimately read to the Jury, the Court effectively directed a verdict on municipal liability, collapsing the distinct *Monell* inquiry into a mere corollary of individual

the Jury.[8] *See* Dkt. No. 121. Because Plaintiff did not object to the omission of the claim, it has been effectively waived. And, more critically, the exclusion of the claim operates as an implicit finding by the Court. *See, e.g.*, *Getty Petroleum Corp. v. Island Transportation Corp.*, 878 F.2d 650, 656 (2d Cir.1989) (issue omitted from special verdict form implicitly decided by trial court).

But if the Court disagrees, the County is still entitled to judgment. Because the individual defendants are entitled to qualified immunity, which requires dismissal of all claims against them, all claims against the County must also be dismissed. *Monell* liability is derivative of individual liability and since the individual defendants have no liability, there is no *Monell* liability. This is particularly true here since Plaintiff did not establish an underlying constitutional violation as outlined above. *Pinter v. City of New York*, 448 F. App'x 99, 106 (2011) (dismissing *Monell* claims because the individual defendants were entitled to qualified immunity and holding that plaintiff's "*Monell* claims are derivative of his claims against the individual defendants, and therefore any claims dismissed as against the individual defendants must also be dismissed as against the City") (citations omitted); *see Garcia v. Bloomberg*, 662 F. App'x 50, 53-54 (2d Cir. 2016) (dismissing *Monell* claim against the city for false arrest where the arresting officers were entitled to qualified immunity against that claim). Accordingly, there cannot be *Monell* liability in such circumstances.

Thank you for your time and consideration of these issues.

Respectfully submitted,

HANCOCK ESTABROOK, LLP

Robert C. Whitaker, Jr.

RCW:sat
Enclosures

---

liability. That misstep deprived the Jury of its duty (and the County's corresponding Seventh Amendment right) to decide whether a final policymaker's acts were the "moving force" behind the alleged constitutional deprivation, a mandatory element of *Monell*.

Defendants will elaborate on this error further if it becomes necessary and merely wish to call the Court's attention to the fact that this instruction improperly bypassed the County's immunity from *respondeat superior* liability and prejudiced the County's Seventh Amendment right to have a jury determine whether the Jury believed that Plaintiff had satisfied the remaining elements of *Monell*.

[8] "There is no clear distinction between special verdicts and general verdicts in this Circuit." *Prendergast v. Pac. Ins. Co.*, No. 09-cv-6248P, 2013 WL 5567656, at *6 (W.D.N.Y. Sept. 25, 2013).