# EXHIBIT B

STATE OF NEW YORK
SUPREME COURT      COUNTY OF ALBANY

---

In the Matter of the Application of

BENJAMIN FERRETTI,

                       Petitioner,

       -against-

NEW YORK STATE DIVISION OF CRIMINAL
JUSTICE SERVICES, TOWN OF GLENVILLE,
GLENVILLE POLICE DEPARTMENT, and
STEPHEN JANIK,

                       Respondents.

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules.

**DECISION AND ORDER**
Index No. 909271-23

---

All Purpose Term
Hon. Laura M. Jordan, Supreme Court Justice

| | |
|---|---|
| **HARDING MAZZOTTI, LLP**<br>1 Wall Street<br>Albany, New York 12205<br>Attorneys for Petitioner | **KELLY A. MAGNUSON, ESQ.** |
| **NEW YORK STATE OFFICE OF THE<br>ATTORNEY GENERAL**<br>Litigation Bureau<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Respondent New York State<br>Division of Criminal Justice Services | **NOAH C. ENGELHART, AAG** |
| **JOHNSON & LAWS, LLC**<br>646 Plank Road, Suite 205<br>Clifton Park, New York 12065<br>Attorneys for Respondents Town Of<br>Glenville, Glenville Police Department,<br>and Stephen Janik | **APRIL J. LAWS, ESQ.** |

1

**Jordan, J.**

On July 24, 2023, Petitioner Benjamin Ferretti ("Petitioner")—a former New York State certified police officer—commenced this proceeding pursuant to CPLR article 78 to challenge a determination by Respondent New York State Division of Criminal Justice Services ("DCJS") decertifying Petitioner and invalidating his basic training certificate (*see* NY St Cts Elec Filing ["NYSCEF"] Doc No. 1). On October 25, 2023, DCJS filed an answer opposing the relief requested in the petition (*see* NYSCEF Doc No. 29). Respondents Town of Glenville (the "Town of Glenville"), Glenville Police Department ("GPD"), and Chief of Police Stephen Janik ("Chief Janik") (collectively, the "Glenville Respondents") have filed a motion to dismiss the petition in lieu of an answer (*see* NYSCEF Doc No. 43).

For the reasons set forth below, the Glenville Respondents' motion is dismiss is granted and the petition is denied.

## I. BACKGROUND

DCJS is authorized, with general advice from the Municipal Police Training Council, "to certify the training of police officers who have satisfactorily completed basic training programs" (*see* NYSCEF Doc No. 30 at ¶ 6, citing Executive Law § 841 [3]). No person may serve as a police officer unless they have received this certification (*see id.* at ¶ 7, citing General Municipal Law § 209-q [1] [a]), and a previously awarded certification " 'may be permanently invalidated upon an officer's removal for cause,' " precluding that person from serving as a police officer in the future (*see id.*, quoting General Municipal Law § 209-q [1] [b-1]). The chief executive officer of any organization which employs police officers is required to immediately notify DCJS when a police officer ceases to serve and the reasons for that separation (*see* NYSCEF Doc No. 30 at ¶ 9, citing 9 NYCRR § 6056.4 [d]; *see also* 9 NYCRR § 6056.2 [d]).

In the time period leading up the events underlying this proceeding, Petitioner was a police officer employed by the Town of Glenville and GPD who had been certified by DCJS as satisfactorily completing his basic training programs (*see* NYSCEF Doc No. 1 at ¶¶ 1, 3). On February 22, 2022, Petitioner was searching a suspect's vehicle in public pursuant to a drug arrest when his pinky finger was penetrated by a loose hypodermic needle (*see* NYSCEF Doc No. 6 at 2). In reaction to this injury, Petitioner struck the side of the suspect's vehicle in anger, breaking his right hand (*see id.*). A sergeant on the scene asked Petitioner what happened, and he replied that he "just got stuck with a needle and . . . punched the side of the truck" (*id.*). The sergeant then replied, "oh you fell?", to which Petitioner replied in the affirmative (*id.*). Petitioner thereafter repeatedly and falsely claimed that he injured his hand falling out of the suspect's vehicle both (1) orally to emergency room staff that evening and a doctor two days later; and (2) in writing on an incident report, an application for NYS Workers Compensation, and an application for General Municipal Law 207-c benefits (*see id.*).

On April 7, 2022, Chief Janik—the Chief of Police for GPD—suspended Petitioner and served him with a notice of disciplinary charges that charged Petitioner with (1) non-compliance with GPD policies and procedures (*see* NYSCEF Doc No. 54 at 156 [GPD Policy 320.4]); (2) misrepresenting material facts on an official document during the course of a work-related investigation (*see id.* at 159 [GPD Policy 320.5.8 [a]]); (3) the falsification of work-related records (*see id.* at 159 [GPD Policy 320.5.8 [b]]); (4) an act on or off-duty that brings discredit to GPD (*see id.* at 159 [GPD Policy 320.5.8 [i]]); (5) criminal, dishonest or disgraceful conduct that adversely affected the member's relationship with GPD (*see id.* at 160 [GPD Policy 320.5.9 [h]]); (6) conduct which any member knows or reasonably should know is unbecoming a member of GPD (*see id.* at 160 [GPD Policy 320.5.9 [m]]); and (7) violating rules prohibiting the

3

suppression, concealment, or distortion of the facts of any reported incident or making a false report (*see id.* at 169 [GPD Policy 323.4]) (*see* NYSCEF Doc No. 6 at 1-4). The notice of disciplinary charges further stated that Petitioner's actions constituted violations of Penal Law § 175.35 (offering a false instrument for filing in the first degree); Penal Law § 105.05 (conspiracy in the fifth degree); and/or Penal Law § 176.10 (insurance fraud in the fifth degree) (*see* NYSCEF Doc No. 6 at 3). The notice of disciplinary charges informed Petitioner that if he was found guilty of the charges set forth above or failed to grieve the matter as permitted by his collective bargaining agreement, he would be terminated from employment with GPD (*see id.* at 4).

On April 8, 2022, Petitioner served the Town of Glenville with a disciplinary grievance denying the charges and requesting a hearing (*see* NYSCEF Doc No. 5 at 15 ¶ 3). Arbitration of the notice of disciplinary charges and the disciplinary grievance began on July 19, 2022 (*see id.*). However, before the hearing commenced, the parties met and reached an agreement whereby the arbitrator would issue a consent award which (1) required Petitioner to "serve a suspension, without pay, of one hundred twenty (120) days . . . until August 7, 2022"; (2) prohibited Petitioner from acting as a Field Training Officer, an Officer in Charge, or serving in the Traffic Safety Unit; and (3) provided that, upon the expiration of his 120-day suspension, Petitioner would "be reinstated full time and in good standing, subject to the Chief's discretion to direct an alternate assignment" (*id.* at 15 ¶¶ 4-5).

Petitioner returned to duty at GPD on August 7, 2022, and was placed on alternate assignment (*see* NYSCEF Doc No. 1 at ¶¶ 42-43; *see also* NYSCEF Doc No. 9). However, on August 31, 2022, Petitioner resigned from his position at GPD in order to—in his words— "explore other opportunities in law enforcement in lieu of continuing the current alternate

assignment [at GPD]" (NYSCEF Doc No. 5 at 5). Shortly thereafter, on September 8, 2022, GPD reported to DCJS that Petitioner's resignation was a standard resignation pursuant to 9 NYCRR 6056.4 (d) (2) (*see* NYSCEF Doc No. 30 at ¶ 16; *see also* NYSCEF Doc No. 12 at 45).

In late January 2023, Chief Janik contacted DCJS via email and phone seeking assistance in revising the September 8 report to DCJS and to seek Petitioner's decertification (*see* NYSCEF Doc No. 30 at ¶¶ 17-18; *see also* NYSCEF Doc No. 31). After some assistance from DCJS staff, on February 15, 2023, Chief Janik sent a formal letter to DCJS requesting that Petitioner's "Police Officer Certification be revoked" because Petitioner had (1) committed misconduct that was "consistent with conduct justifying removal for cause as defined in [9 NYCRR §] 6056.2 (h) (1) (a) and (b)"; and (2) resigned with the alternate assignment requirement of the related consent agreement "in mind" and "consistent [with] what is defined in [9 NYCRR §] 6056[.2] (h) (2) (b)" (NYSCEF Doc No. 32 at 1 [hereinafter, the "February 15 letter"]). On March 21, 2023, DCJS sent a letter to Petitioner notifying him that, in accordance with General Municipal Law § 209-q (1) (b-1), his "basic training certification [was] permanently invalidated effective immediately and [he was] ineligible for any future certification" (NYSCEF Doc No. 3).

Petitioner administratively appealed DCJS' March 21 determination on April 20, 2023, arguing that his decertification should be reversed because his resignation did not meet the definition of removal for cause under 9 NYCRR § 6056.2 (h) inasmuch as he had been returned to full duty in good standing prior to his August 31 resignation (*see* NYSCEF Doc No. 5 at 1-3). DCJS issued a response on July 13, 2023, concluding that Petitioner's decertification would not be reversed because it had correctly determined that Petitioner had been removed for cause (*see* NYSCEF Doc No. 11 at 2-3).

NYSCEF DOC. NO. 61                                                RECEIVED NYSCEF: 03/13/2024

Case 3:22-cv-00340-AMN-ML    Document 125-2    Filed 07/14/25    Page 7 of 12

Petitioner thereafter commenced the instant proceeding, arguing that DCJS has "exceeded its authority and has acted arbitrarily and capriciously," and seeking to "void the decertification" (NYSCEF Doc No. 1 at ¶ 72). DCJS has submitted an answer opposing the relief requested in the petition and arguing that its determination was neither arbitrary nor capricious and explicitly within its statutory authority (*see* NYSCEF Doc No. 41). The Glenville Respondents have made a pre-answer motion to dismiss, arguing that (1) they are not proper parties to this proceeding; (2) any claims against them are time-barred; (3) the GPD is merely a subdivision of the Town of Glenville and not an entity amendable to suit; and (4) any alleged acts by Chief Janik were legitimate and lawful (*see* NYSCEF Doc No. 46).

## II. DISCUSSION

A.  **Jurisdiction over the Glenville Respondents**

### *1. Proper Parties to this Proceeding*

The Glenville Respondents argue that they are not proper parties to this proceeding because, unlike DCJS, they had no "authority to make any final determinations regarding Petitioner's decertification" or "to provide the relief he seeks" (NYSCEF Doc No. 46 at 14-15). In opposition, Petitioner argues that there is a "dispute" as to who "made the decision" to invalidate Petitioner's basic training certification and suggests that both DCJS and the Glenville Respondents "are proper parties due to the interrelationship of the decision[-]making process" (NYSCEF Doc No. 55 at 12).

Petitioner's argument that all the parties had shared responsibility in issuing the determination to invalidate Petitioner's basic training certification is unpersuasive. New York statute clearly gives to DCJS the responsibility for both (1) certifying police officers (*see* Executive Law § 841 [3]); and (2) the maintenance of a permanent registry for each police

6 of 11

officer, including the investigation and removal of police officers who are no longer eligible for certification upon their removal for cause under General Municipal Law § 209-q (*see* Executive Law § 845 [3] [a], [b]). Although there is no doubt that information provided by or sourced from employers like the Glenville Respondents plays a part in DCJS' determination (*see* 9 NYCRR § 6056.4 [d]; Executive Law § 845 [3] [b]), the Glenville Respondents do not have the power to certify or decertify Petitioner; rather, that determination is solely the province of DCJS.[1] Furthermore, the only relief requested in the petition is for the decertification to be voided and for Petitioner's training be reinstated (*see* NYSCEF Doc No. 1 at ¶ 72). Only DCJS has the authority to grant that relief. In sum, because the Glenville Respondents did not render the determination decertifying Petitioner and are without authority to grant the relief requested in the petition, they are not proper parties to this proceeding and it must be dismissed insofar as asserted against them (*see Abreu v Hogan*, 72 AD3d 1143, 1144 [3d Dept 2010] [holding that a respondent who was not involved in the underlying disciplinary determinations and was without authority to grant the relief requested by the petitioner was not a proper party to the proceeding]; *see also Schulz v Town of Hopewell Zoning Bd. of Appeals*, 163 AD3d 1477, 1478 [4th Dept 2018] [holding that a respondent who did not render the underlying determination was not a proper party to the proceeding]; *Matter of Bosco v McGuire*, 111 AD3d 931, 933 [2d Dept 2013] [holding that a respondent who did not render the underlying determination and against whom the petitioner did not seek any relief was not a proper party to the proceeding]).

Accordingly, the Glenville Respondents' motion to dismiss on the ground that they are

---

[1] This conclusion is bolstered by the fact that Petitioner's administrative appeal was addressed to DCJS alone (*see* NYSCEF Doc No. 5 at 1-2), and the subsequent denial of that appeal of his decertification came only from DCJS (*see* NYSCEF Doc No. 11 at 1-3).

7

not proper parties to this proceeding is granted.[2]

**B.   The Merits of the Petition with Respect to DCJS**

*1. Standard*

" '[I]n reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious' " (*Natasha W. v New York State Off. of Children and Family Services*, 32 NY3d 982, 984 [2018], quoting *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (*Matter of Peckham*, 12 NY3d at 431, citing *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). "It follows that '[i]f the court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency' " (*Save Am.'s Clocks, Inc. v City of New York*, 33 NY3d 198, 207 [2019], quoting *Matter of Peckham*, 12 NY3d at 431). "Further, courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (*Matter of Peckham*, 12 NY3d at 431 [citation omitted]).

*2. DCJS' Decertification Determination*

As noted above, a training certification "may be permanently invalidated upon an officer's removal for cause" (General Municipal Law § 209-q [1] [b-1]). A "[r]emoval for cause" is, in turn, defined as "an interruption in service . . . subsequent to and in connection with allegations of misconduct" (*see* 9 NYCRR § 6056.2 [h]). Petitioner argues he was not

---

[2] In light of this holding, the Court declines to address the Glenville Respondents' remaining arguments.

8

"remov[ed] for cause" within the meaning of Section 6056.2 because there are no "credible facts or evidence" that his interruption in service occurred "in connection with" the his misconduct (*see* NYSCEF Doc No. 58 at 7-11). Rather, Petitioner argues that the discipline for his misconduct had been "clearly . . . resolved" by the time of his resignation (*id.* at 8-9).[3]

After careful consideration of the facts of Petitioner's resignation and the language of the consent agreement, the Court concludes that Petitioner's argument that his resignation came only after "a full resolution of all disciplinary charges" is incorrect. The consent award clearly provides that, after serving the 120-day suspension, Petitioner would "be reinstated full time and in good standing, *subject to the Chief's discretion to direct an alternate assignment*" (NYSCEF Doc No. 5 at 15 ¶ 5 [emphasis added]). A plain reading of this language in the context of the entire consent agreement leads the Court to conclude that the potential imposition of an alternate assignment was part and parcel of the disciplinary consequences Petitioner agreed to in the consent award.

Petitioner nevertheless argues that the reference to "alternate assignment" in the consent award "was never intended to be discipline" because it was not included "as one of the terms of the agreement" in paragraph four of the consent award (NYSCEF Doc No. 55 at 14-15). The Court does not find this view of the consent agreement to be persuasive because Petitioner has not provided (1) any compelling reason to limit the terms of the consent award only to paragraph four of the document; or (2) any alternative explanation for why the consent agreement would specifically give Chief Janik the discretion to impose alternate assignment on Petitioner once he

---

[3] Petitioner appears to concede that his resignation constituted "an interruption in service" within the meaning of 9 NYCRR § 6056.2 (h) (2) (b); and that his conduct in connection with the February 22, 2022 incident met the definition of "misconduct" under 9 NYCRR § 6056.2 (h) (1) (*see* NYSCEF Doc No. 58 at 9).

9

returned to service after his suspension. Relatedly, Petitioner also claims that the GPD policy manual (*see* NYSCEF Doc No. 54) and the Town of Glenville police officers collective bargaining agreement (*see* NYSCEF Doc No. 51) both provide that "alternate assignments can NOT be used as discipline" (NYSCEF Doc No. 55 at 13). However, Petitioner fails to provide a cite to any specific portion of these two documents and, after a careful reading of both documents, the Court itself cannot locate any such prohibition (*see* NYSCEF Doc No. 54 at 156-61 [containing a "CAUSES FOR DISCIPLINE" section but no discussion of prohibited discipline]; NYSCEF Doc No. 51 at 39-46 [containing a "DISCIPLINARY PROCEDURE" section but no discussion of prohibited discipline]).

Ultimately, Chief Janik did, in fact, exercise his discretion under the consent agreement to impose an alternate assignment on Petitioner after his return. Petitioner was still serving under that alternate assignment at the time of his resignation, and even explicitly referenced the alternate assignment as the reason for his departure in his resignation letter (*see* NYSCEF Doc No. 5 at 5 ["I have decided to explore other opportunities in law enforcement in lieu of continuing the current alternate assignment in Glenville"]). Because Petitioner resigned—*i.e.* had an interruption in service under Section 6056.2 (h) (2)—as a direct response to discipline imposed as a result of allegations of misconduct under Section 6056.2 (h) (1), the Court concludes that DCJS' finding that Petitioner's resignation constituted "removal for cause" under Section 6056.2 (h) had a sound basis in reason and the facts. As a result, DCJS' decision to permanently invalidate Petitioner's certification in light of his removal for cause under General Municipal Law § 209-q (1) (b-1) had a rational basis.

Accordingly, the petition is denied.

### III. CONCLUSIONS

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, it is hereby

**ORDERED** that the Glenville Respondents' motion to dismiss (see NYSCEF Doc No. 43) this proceeding as against them is **GRANTED**; and it is further

**ORDERED** that the petition (see NYSCEF Doc No. 1) is **DENIED**.

This shall constitute the Decision and Order of the Court. The Court has uploaded this original Decision and Order to the case record in this matter as maintained on the NYSCEF website whereupon it is to be filed and entered by the County Clerk's Office. Counsel for Respondents are not relieved from the applicable provisions of CPLR § 2220 and § 202.5-b (h) (2) of the Uniform Rules of Supreme and County Courts insofar as they relate to service and notice of entry of the filed documents upon all other parties to the proceeding, whether accomplished by mailing or electronic means, whichever may be appropriate dependent upon the filing status of the party.

March 13, 2024
Troy, New York

_____
Laura M. Jordan
Supreme Court Justice

03/14/2024

Papers Considered:

1. Docket Numbers 1-14 (Petition and attached Exhibits)
2. Docket Numbers 29-40 (Answer and attached Exhibits)
3. Docket Number 41 (Memorandum of Law in Opposition to Petition)
4. Docket Numbers 43-46 (Motion to Dismiss)
5. Docket Numbers 50-55 (Memorandum of Law and Affirmation in Opposition to Motion)
6. Docket Number 56 (Memorandum of Law in Reply)
7. Docket Numbers 58-59 (Memorandum of Law and Affirmation in Reply)