**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

WAYNE T. MOULTON,

                        Plaintiff,

v.

COUNTY OF TIOGA, NEW YORK;
TIOGA COUNTY SHERIFF'S DEPARTMENT;      Civil Action No.:
GARY W. HOWARD, individually and in his      3:22-cv-00340 (AMN/ML)
capacity as Sheriff of Tioga County; and
SHAWN J. NALEPA, individually and in his
capacity as Tioga County Sheriff's Department
Captain of Operations,

                        Defendants.

---------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## REGARDING QUALIFIED IMMUNITY

Sarah E. Ruhlen, Esq.
Bar Roll # 517793
SATTER RUHLEN LAW FIRM, PLLC
*Attorneys for Plaintiff*
217 S. Salina Street, 6th Floor
Syracuse, New York 13202
Tel.: (315) 471-0405
Fax: (315) 471-7849
sruhlen@satterlaw.com

Megan K. Thomas, Esq.
Megan Thomas Law, PLLC
*Attorneys for Plaintiff*
220 South Warren Street
10th Floor
Syracuse, NY 13202
T. 315-999-1491
megant@mkt-law.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................... 1

STATEMENT OF FACT........................................................................................... 2

LEGAL ANALYSIS ............................................................................................... 2

POINT I ............................................................................................................. 3

The Qualified Immunity Defense Is Inapposite Where, As Here, Defendants Knew Or
Reasonably Should Have Known They Would Deprive Plaintiff of His Constitutional
Rights, Their Actions Were Malicious, And The Jury Has Already Determined That
The Defendants Violated Plaintiff's Constitutional Rights………………………………… 3

POINT II ............................................................................................................ 4

Reasonably Competent Officials Would Have Known Their Actions Were Illegal ................. 4

A. Defendants' Actions Were Not Objectively Reasonable ...................................... 4

B. Defendants Knew or Reasonably Should have Known Their Actions Would Deprive
Plaintiff of his Constitutional Rights .............................................................. 5

a. The Law Is Clearly Established ................................................................. 6

b. Defendants' Failure to Consult with Legal Counsel Prior To Contacting the DCJS
Was Unreasonable............................................................................... 7

c. Although Howard May Have Directed Nalepa to Take Action, Nalepa's Conduct
Was Not Objectively Reasonable............................................................. 8

CONCLUSION................................................................................................ 9

## TABLE OF AUTHORITIES

<u>**Cases**</u>

A.S. v. City Sch. Dist. of Albany, 2022 U.S. Dist. LEXIS 21693 (N.D.N.Y. Feb. 7,

2022) ................................................................................................................... 2

Antuna v. County of L.A., 2015 U.S. Dist. LEXIS 200678 (C.D.Ca., September 30, 2015)) ....... 5

Bachus v. Schenectady City Sch. Dist., No. 09-CV-0843 (GTS/RFT), 2011 U.S. Dist. LEXIS

13444, 2011 WL 500540 (N.D.N.Y. Feb. 10, 2011) .................................................. 5

Bd. of Regents v. Roth, 408 U.S. 564(1972) .............................................................. 5, 6

Blackburn v. Snow, 771 F.2d 556 (1st Cir. 1985) ........................................................ 8

Cole-Hatchard v. Hoehmann, 2020 U.S. Dist. LEXIS 173662 (S.D.N.Y. Sept. 21, 2020) ........... 8

District of Columbia v. Wesby, 583 U.S. 48 (2018) ...................................................... 2

Doolittle v. McMahon, 245 A.D.2d 736 (N.Y. App. Div. 3rd Dept. 1997) .................................. 6

Dushane v. Leeds Hose Co. #1, 6 F. Supp. 3d 204 (N.D.N.Y. 2014) ............................................ 5

Enders v. Boone, 658 F. Supp. 3d 70 (N.D.N.Y. 2023) .................................................... 5

Ferlito v. City of Oswego, 2006 U.S. Dist. LEXIS 54561 (N.D.N.Y. Aug. 4, 2006) ..................... 8

Figueroa v. Mazza, 825 F.3d 89 (2d Cir. 2016) ........................................................ 3

Fitzgerald v. City of Troy, 2012 U.S. Dist. LEXIS 173704 (N.D.N.Y. Dec. 7, 2012). .............. 4, 8

Garcia v. Doe, 779 F.3d 84 (2d Cir. 2015) .................................................... 3

Garza v. Starr County, 2013 U.S. Dist. LEXIS 111552 (S.D. Tex. August 8, 2013) ..................... 5

Gonzalez v. Delaware County, 2017 U.S. Dist. LEXIS 198496 (N.D.N.Y. Dec. 4, 2017)............. 8

Harlow v. Fitzgerald, 457 U.S. 800 (1982) .............................................................. 2, 4

Hricik v. McMahon, 247 A.D.2d 935 (N.Y. App. Div. 4th Dept. 1998) .................................... 6, 7

Huntley v. Community Sch. Bd., 543 F.2d 979 (2d Cir. 1976)....................................... 6

Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011) ................................................... 2, 3, 5, 6

Jordan v. Ector County, 516 F.3d 290 (5th Cir. 2008) ............................................ 5

Martinez v. Simonetti, 202 F.3d 625 (2d Cir. 2000) ............................................... 8

Mathie v. Fries, 121 F. 3d 808 (2d Cir. 1997) ........................................................ 9

Matter of Depamphilis v. Kelly, 944 N.Y.S. 2d 861 (N.Y. Sup. Ct. 2012), aff'd, 107 A.D.3d 611

    (N.Y. App. Div. 1st Dept. 2013) ........................................................................ 7

Moskowitz v. Coscette, 51 Fed. Appx. 37 (2d Cir. Nov. 15, 2002) ........................... 8, 9

Nagle v. Marron, 663 F.3d 100 (2d Cir. 2011) ...................................................... 4

People v. Saporita, 132 A.D.2d 713 (N.Y. App. Div. 2d Dept. 1987) ........................ 6

Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438 (2d Cir. 1980) .............. 6

Saucier v. Katz, 533 U.S. 194 (2001). .................................................................. 5

Serna v. Manzano, 616 F.2d 1165 (10th Cir. 1980) ............................................... 5

Simmons v. Stanton, 502 F. Supp. 932 (W.D. Mich. 1980) ..................................... 5

Tellier v. Fields, 280 F.3d 69 (2d Cir. 2000) ......................................................... 4

Vearling v. Bensalem Twp. Sch. Dist., Civil Action No. 94-7711, 1997 U.S. Dist. LEXIS 3103

    (E.D. Pa. March 17, 1997) ............................................................................... 5

Velez v. Levy, 401 F.3d 75 (2d Cir. 2005) ............................................................ 6

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) ............................................... 4

**Statutes**

42 U.S.C. § 1983 ............................................................................................... 2

N.Y Penal Law §§175.20 .................................................................................... 6

N.Y. Penal Law §§175.30 ................................................................................... 6

## PRELIMINARY STATEMENT

Pursuant to the Court's request (Dkt. 122), Plaintiff Wayne Moulton ["Moulton" or "Plaintiff"] submits the following position statement on the issue of qualified immunity.

The instant action arises from false statements that Defendants Sheriff Gary Howard ["Howard"] and Captain Shawn Nalepa ["Nalepa"] [together, "Defendants"] made to the New York State Division of Criminal Justice Services ["DCJS"], resulting in the DCJS revoking Moulton's law enforcement certificate, which precluded Moulton from pursuing future employment as a police officer and caused significant reputational harm. On June 23, 2025, after a four-day jury trial, the jury returned a verdict in favor of Plaintiff on all questions, including that Defendants violated Plaintiff's First and Fourteenth Amendment rights. The jury also found that Howard and Nalepa engaged in defamation when they made statements to the DCJS that they knew were false or had reckless disregard for the truth or falsity of the statements. Moreover, the jury found that Plaintiff is entitled to punitive damages.

The Court has requested briefing on the issue of qualified immunity. As a preliminary matter, the qualified immunity defense is inapplicable to Defendants Howard and Nalepa here where the jury has already determined that these Defendants violated Plaintiff's constitutional rights, Defendants knew or should have known their actions would violate the Constitution, and they published statements about Plaintiff with knowledge or reckless disregard for the truth. The Defendants may argue that they believed their actions were reasonable at the time they were made, but this argument is inapposite as it has already been determined Defendants violated Plaintiff's constitutional rights.

**STATEMENT OF FACT**

The Jury concluded that when Defendants Howard and Nalepa sought to remove Plaintiff's name from the registry without due process, they knew that this would result in Plaintiff losing the ability to serve as a police officer in the future. Furthermore, testimony at trial reveals Defendants intentionally took these actions only against Plaintiff and not against Officer Schmidt or Lieutenant Marsh. Testimony at trial indicates that while Plaintiff spoke frequently about wanting to run for Sheriff one day, Schmidt and Marsh did not. Howard and Nalepa testified that they had training on constitutional law. They also frequently handled constitutional law issues in the workplace. Therefore, it is clear that Defendants Howard and Nalepa knew or reasonably should have known their actions would violate Plaintiff's constitutional rights, but they acted anyway.

**LEGAL ANALYSIS**

Supreme Court precedent is clearly established on this issue: public officials are entitled to qualified immunity on a § 1983 claim unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. District of Columbia v. Wesby, 583 U.S. 48, 62-63 (2018); *see also generally* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A qualified immunity defense is also not available to a public official who acted with malicious intent, or if he knew or reasonably should have known that his actions would violate a plaintiff's constitutional right. Harlow, 457 U.S. 815.

Qualified immunity is an affirmative defense on which defendants bear the burden of proof. A.S. v. City Sch. Dist. of Albany, 2022 U.S. Dist. LEXIS 21693 at *70 (N.D.N.Y. Feb. 7,

2

2022); <u>Jackler v. Byrne</u>, 658 F.3d 225, 242 (2d Cir. 2011). Defendants must show either that a) the action did not violate clearly established right or law or b) the defendant had an objectively reasonable belief that his action did not violate such law. <u>Garcia v. Doe</u>, 779 F.3d 84, 92 (2d Cir. 2015). A right or law may be clearly established even in the absence of a court decision directly addressing the question, as long as "preexisting law clearly foreshadows a particular ruling on the issue." <u>Id.</u> An official's belief is objectively reasonable only if "*any* reasonable [official], out of the wide range of reasonable people…*could have* determined that the challenged action was lawful."[1] <u>Figueroa v. Mazza</u>, 825 F.3d 89, 100 (2d Cir. 2016) (emphasis in original).

## POINT I

### The Qualified Immunity Defense Is Inapposite Where, As Here, Defendants Knew Or Reasonably Should Have Known They Would Deprive Plaintiff Of His Constitutional Rights, Their Actions Were Malicious, And The Jury Has Already Determined That Defendants Violated Plaintiff's Constitutional Rights

The Jury has already determined that Defendants violated Plaintiff's constitutional rights and other clearly established law, and acted with reckless disregard for the truth (Dkt. 121). Defendants Howard and Nalepa's actions towards Plaintiff were malicious in nature: Defendants admitted at trial that, although three employees, including Plaintiff, were accused of drinking in 2020, only Plaintiff's certification was removed. The Jury concluded that Defendants knowingly or recklessly made false statements regarding Plaintiff to the DCJS. The act of singling Plaintiff out and ensuring he could never serve as a police officer again; Defendants' admission that their intent was to have him decertified; the fact that they did not take the same action with regard to Marsh; Defendants' failure to alert Plaintiff as to their intentions or give him a chance to defend

---

[1] While the defense of qualified immunity is available to officials sued in their individual capacities, it is not available in their official capacities or to municipalities. <u>Jackler v. Byrne</u>, 658 F.3d 225, 244 (2d Cir. 2011).

himself; and the fact that Defendants did not terminate or decertify Schmidt and in fact quickly promoted him are all facts that demonstrate that the actions were malicious in nature.

Consequently, the qualified immunity defense is inapplicable here.

## POINT II

**Reasonably Competent Officials Would Have Known Their Actions Were Illegal**

A. <u>Defendants' Actions Were Not Objectively Reasonable</u>

Even if this Court determines that the qualified immunity defense *could* apply to Defendants Howard and Nalepa, qualified immunity is not available in this case because Defendants' actions were not objectively reasonable. "The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact." <u>Fitzgerald v. City of Troy</u>, 2012 U.S. Dist. LEXIS 173704 at *77 (N.D.N.Y. Dec. 7, 2012). The standard is an objectively reasonable official. <u>Tellier v. Fields</u>, 280 F.3d 69, 84 (2d Cir. 2000). "The 'subjective good faith of government officials' plays no part in determining whether an official's actions are protected by qualified immunity. <u>Nagle v. Marron</u>, 663 F.3d 100, 114 (2d Cir. 2011); quoting <u>Harlow</u>, 457 U.S. at 816.

"A contention that…it was objectively reasonable for the official to believe that his acts did not violate those rights has 'its principle focus on the particular facts of the case.'" <u>Zellner v. Summerlin</u>, 494 F.3d 344, 367 (2d Cir. 2007). Factors such as how long a law has been clearly established and whether Defendants sought the advice of counsel may be considered in determining whether Defendants' actions were objectively reasonable. <u>Fitzgerald</u>, 2012 US Dist. LEXIS 173704 at *78-80.

B.  <u>Defendants Knew or Reasonably Should have Known Their Actions Would Deprive Plaintiff of his Constitutional Rights</u>

A law can be "clearly established" even if the specific action in question has not been held unlawful. <u>Nagle</u>, 663 F.3d at 114. Where the unlawfulness of a particular action is apparent in light of pre-existing law, an officer is on notice that his conduct is unlawful. <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).

With regard to the First Amendment, Defendants may argue that they were not aware that Plaintiff had the right to be free from retaliation for expressing his desire to run for Sheriff. However, it has been "clearly established since at least 1968" that a public employee has a right to be free from retaliation for speaking as a citizen on a matter of public concern. <u>Jackler</u>, 658 at 243-44 (surveying cases). It is well-established that expressing a political ambition is protected First Amendment activity; additionally the analysis of what constitutes protected speech in the public employment context is quite well-settled, viz., the employee spoke as a citizen on a matter of public concern – which is precisely what discussing one's political ambitions is, whether it involves an established campaign (see, <u>Enders v. Boone</u>, 658 F. Supp. 3d 70, 87 (N.D.N.Y. 2023); <u>Dushane v. Leeds Hose Co. #1</u>, 6 F. Supp. 3d 204, 211 (N.D.N.Y. 2014); <u>Bachus v. Schenectady City Sch. Dist.</u>, No. 09-CV-0843 (GTS/RFT), 2011 U.S. Dist. LEXIS 13444, 2011 WL 500540, at *9 & n.6 (N.D.N.Y. Feb. 10, 2011)) or simply expressing an interest in running for political office (see, <u>Serna v. Manzano</u>, 616 F.2d 1165 (10th Cir. 1980); <u>Simmons v. Stanton</u>, 502 F. Supp. 932, 933-34 (W.D. Mich. 1980); <u>Vearling v. Bensalem Twp. Sch. Dist.</u>, Civil Action No. 94-7711, 1997 U.S. Dist. LEXIS 3103 at *33-34 (E.D. Pa. March 17, 1997); <u>Jordan v. Ector County</u>, 516 F.3d 290, 297-98 (5th Cir. 2008); <u>Garza v. Starr County</u>, 2013 U.S. Dist. LEXIS

5

111552 at *13-14 (S.D. Tex. August 8, 2013); <u>Antuna v. County of L.A.</u>, 2015 U.S. Dist. LEXIS

200678 at *40-41 (C.D.Ca., September 30, 2015)).

Insofar as the Fourteenth Amendment violation, the law establishing that statements

impugning a professional's competence may entitle that professional to notice and an opportunity

to be heard has been established since 1972, when the Supreme Court concluded in <u>Bd. of</u>

<u>Regents v. Roth</u> that such statements, accompanied by a more concrete loss, implicate a

protected liberty interest entitling the professional to due process protections. 408 U.S. 564,

573(1972); see also <u>Huntley v. Community Sch. Bd.</u>, 543 F.2d 979, 985 (2d Cir. 1976); <u>Quinn v.</u>

<u>Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 447 (2d Cir. 1980).

All of the above authority was clearly established long before Howard and Nalepa

engaged in the activity that violated Moulton's First and Fourteenth Amendment rights.

Therefore, they knew or should have known their actions would violate Plaintiff's Constitutional

Rights.

    *a.  The Law Is Clearly Established*

As shown *supra*, because "it has long been settled that due process generally requires a

state to afford its citizens 'some kind of hearing' prior to depriving them of liberty,'" an official

with final authority over significant matters is expected to be aware that failure to provide notice

or opportunity to be heard violates the Fourteenth Amendment. <u>Velez v. Levy</u>, 401 F.3d 75, 101

(2d Cir. 2005). Likewise, it has long been clear that "government officials may not take adverse,

punitive action against individuals in retaliation for the exercise of [free speech rights]." <u>Id. at</u>

101-02.

Additionally, relevant to the instant matter, New York State Penal Law specifically

prohibits tampering with public records (<u>N.Y Penal Law §§175.20</u>) and offering false

instruments for filing (N.Y. Penal Law §§175.30). There is no serious doubt that law enforcement officers are required to abide by these laws. Jackler, 658 F.3d at 239; see also, People v. Saporita, 132 A.D.2d 713 (N.Y. App. Div. 2d Dept. 1987), app. denied 70 N.Y.2d 937 (1987); Doolittle v. McMahon, 245 A.D.2d 736 (N.Y. App. Div. 3rd Dept. 1997); Hricik v. McMahon, 247 A.D.2d 935 (N.Y. App. Div. 4th Dept. 1998); Matter of Depamphilis v. Kelly, 944 N.Y.S. 2d 861 (N.Y. Sup. Ct. 2012), aff'd, 107 A.D.3d 611 (N.Y. App. Div. 1st Dept. 2013).

Here, Howard and Nalepa – again, both of whom learned principles of constitutional law as part of their basic training – had the benefit of more than 50 years of legal precedent establishing that making false statements about an individual which deprive that individual of a liberty interest raises due process concerns, and that public employees have the right to speak as citizens regarding matters of public concern without retaliation. It does not require a lawyer to understand that speaking about one's political ambitions is speech that is protected by the First Amendment. Nor is it at-issue that an individual is entitled to notice and a hearing before he is stripped of a liberty interest, such as a professional certificate.

Furthermore, it can hardly be a surprise to these law enforcement officers that creating a document with false information and submitting that document to a state agency is illegal in this state. In order to take the at-issue actions, Howard and Nalepa had to not only ignore their constitutional training but also provisions of the New York State Penal Code prohibiting falsification of documents. These circumstances weigh against a finding that it was objectively reasonable for them to believe their actions were permissible.

b.  *Defendants' Failure to Consult with Legal Counsel Prior To Contacting the DCJS Was Unreasonable*

Consulting with an attorney prior to taking an action which deprives an individual of his constitutional rights is a factor supporting the reasonableness of the officer's actions; conversely,

where a public official fails to consult any legal or professional authority before engaging in an action that violates an individual's rights, that failure indicates a lack of objective reasonableness.[2] Gonzalez v. Delaware County, 2017 U.S. Dist. LEXIS 198496 at *17-20 (N.D.N.Y. Dec. 4, 2017); see also Fitzgerald, 2012 U.S. Dist. LEXIS 173704 at *79; Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir. 2000); Ferlito v. City of Oswego, 2006 U.S. Dist. LEXIS 54561 at *23 (N.D.N.Y. Aug. 4, 2006); Blackburn v. Snow, 771 F.2d 556, 570 (1st Cir. 1985).

Here, Defendants have argued that they believed that they had a duty to contact the DCJS to get Plaintiff decertified a year after he retired. But they testified that they did not reach out to the County Attorney to get his opinion on the matter. Nor did they consult with the County Attorney to determine whether the document they created was truthful enough to submit to a state agency with the power to revoke Plaintiff's certificate. Given that they were operating against multiple layers of established law (see previous section), it would have made sense to seek legal advice on whether they did indeed have any duty to contact the DCJS. Their failure to do so was not objectively reasonable.

c. *Although Howard May Have Directed Nalepa to Take Action, Nalepa's Conduct Was Not Objectively Reasonable*

Although a police officer acting pursuant to orders may have an argument that he is entitled to qualified immunity where he could reasonably believe that he was not violating any rights, the "just following orders" defense does not apply where that belief is not reasonable. Moskowitz v. Coscette, 51 Fed. Appx. 37 (2d Cir. Nov. 15, 2002). Thus, for example, in Moskowitz, where a defendant argued he should be protected by qualified immunity because his superior encouraged his violation of the plaintiff's rights, the Second Circuit stated, "it is

---

[2] Even where an official takes the advice of counsel before taking the illegal action, such consultation may not provide the official qualified immunity where it was objectively *unreasonable* for the official to believe his actions were legal. Cole-Hatchard v. Hoehmann, 2020 U.S. Dist. LEXIS 173662 (S.D.N.Y. Sept. 21, 2020).

difficult to conclude that it is reasonable for [the defendant] to believe that selective persecution of one officer does not violate such officer's rights." 51 Fed. Appx at 39, citing <u>Mathie v. Fries</u>, 121 F. 3d 808, 815 (2d Cir. 1997).

Here, although Nalepa acted according to Howard's directives, it is "difficult to conclude that it was reasonable for [him] to believe that selective persecution" of Moulton did not violate Moulton's rights (see <u>Moskowitz</u>, *supra*). Nalepa testified that he did not contact the DCJS with information regarding Marsh, although Marsh separated from service under the same circumstances as Moulton. Nalepa testified that the purpose of contacting the DCJS was to get Moulton decertified. It is simply not reasonable to believe that such targeted action did not violate Moulton's rights.

## CONCLUSION

For the foregoing reasons and authorities, Plaintiff respectfully submits that Defendants Howard and Nalepa are not entitled to the defense of qualified immunity.

DATED:        July 14, 2025

/s/ Sarah E. Ruhlen
Sarah E. Ruhlen, Esq.
Bar Roll # 517793
SATTER RUHLEN LAW FIRM, PLLC
*Attorneys for Plaintiff*
217 S. Salina Street, 6th Floor
Syracuse, New York 13202
Tel.: (315) 471-0405
Fax: (315) 471-7849
sruhlen@satterlaw.com

/s/ Megan K. Thomas
Megan K. Thomas, Esq.
Megan Thomas Law, PLLC
*Attorneys for Plaintiff*
220 South Warren Street
10th Floor
Syracuse, NY 13202
T. 315-999-1491
megant@mkt-law.com

To:     All counsel of record, via ECF